R. Daniel Fleck – Wyo. Bar #6-2668
M. Kristeen Hand – Wyo. Bar #6-3544
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
Po Box 548
Jackson, WY 83001
307-733-7290
307-733-5248 (facsimile)

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

DEC 07 2011

Stephan Harris, Clerk
Cheyenne

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

JIMMIE G. BILES, JR., MD,  )
a resident of Wyoming,      )
                            )
    Plaintiff,        )
                            )   CIVIL NO. _11-CU-366-F_
    vs.               )
                            )
JOHN HENRY SCHNEIDER, JR., MD,  )
MICHELLE RENE SCHNEIDER,        )
husband and wife, both residents of Montana;  )
JOHN HENRY SCHNEIDER, JR., MD, PC  )
a Montana corporation; and JOHN DOES I-XXX,  )
                            )
    Defendants.       )

## COMPLAINT

Plaintiff, by and through his counsel, R. Daniel Fleck and M. Kristeen Hand of THE SPENCE LAW FIRM, LLC, and for his claims for relief against the Defendants states and alleges as follows:

### PARTIES

1.    Plaintiff Jimmie G. Biles, Jr., MD is a resident of the State of Wyoming. He is domiciled in Cody, Wyoming.

2.    Defendant John H. Schneider, Jr. MD is a resident of the State of Montana.

3.    Defendant Michelle R. Schneider is a resident of the State of Montana.

3 Summonses issued

4.  Defendants John H. Schneider, Jr. MD and Michelle R. Schneider are husband and wife.

5.  Defendant John H. Schneider, Jr. MD, PC (hereinafter "Schneider Corp") is a corporation and is incorporated in the State of Montana with its principal place of business in Billings, Montana.

6.  Defendant John H. Schneider, Jr. MD is the president and only principal of Defendant Schneider Corp.

7.  At all times material, Defendant John H. Schneider, Jr. MD was and still is employed by and/or is an agent of Defendant Schneider Corp.

8.  Upon information and belief, at all times material, Defendant John H. Schneider, Jr. MD was working within the course and scope of employment with Schneider Corp, and/or was otherwise working within the express, implied or apparent authority provided to him by Schneider Corp.

9.  Defendant Schneider Corp, as a legal entity, can act only through its employees and agents. As the employer or principal of those who set policy and played either an active or passive role in the supervision of its employee(s) and/or agent(s), Schneider Corp is vicariously responsible for the tortious and punitive acts of its employee(s), wherein they intentionally, recklessly and/or negligently defamed and otherwise committed tortious and punitive acts against Plaintiff Jimmie Biles, MD.

10. Defendant John Does I-XXX are unknown individuals and/or corporations that acted in concert with the named Defendants on all acts herein alleged. Due to the named

Defendants' intentional concealment of the identities of the additional actors, the identities of Defendant John Does I-XXX individuals and/or corporations remain unknown to Plaintiff. Plaintiff, therefore, reserves the right to name them as defendants once discovery reveals their identities.

11. Defendant John H. Schneider, Jr. MD is a neurosurgeon, practicing in Billings, Montana and Cody, Wyoming.

12. Plaintiff Jimmie Biles, MD is an orthopedic surgeon practicing in Cody, Wyoming.

13. All allegations made in this Complaint against Defendants collectively shall mean allegations against any one Defendant or any combination of Defendants.

## JURISDICTION & VENUE

14. Plaintiff incorporates by reference all statements and allegations contained in numbered paragraphs above.

15. Jurisdiction is based on 28 U.S.C. §1331 and 28 U.S.C. §1367. The amount in controversy is substantially in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

16. This Court has both personal and subject matter jurisdiction.

17. Plaintiff's claims are brought pursuant to 18 U.S.C. § 1964(c).

18. Pursuant to 28 U.S.C. § 1391, the proper venue for this cause of action is the United States District Court for the District of Wyoming since this is the judicial district where a substantial part of the events giving rise to the claim occurred.

## STATEMENT OF FACTS AND CONSPIRACY

19.  Plaintiff alleges and incorporates by reference herein all of the allegations contained in the paragraphs above.

20.  Defendants, one or all of them, conspired to defame the Plaintiff.

21.  Defendants, one or all of them, set out on a course of conduct with the intention of publishing false statements about the Plaintiff in an attempt to destroy the Plaintiff's credibility as a medical doctor, destroy his reputation in the community, and destroy his medical practice.

22.  Defendants, one or all of them, intended to cause the Plaintiff emotional distress.

23.  In an effort to defame and otherwise injure the Plaintiff, the Defendants conspired with an individual from Indiana by the name of Lisa Shaurette Fallon.

24.  Defendants contacted Lisa Fallon with the intention of using her to help them publish a flyer that Defendants knew contained false statements about the Plaintiff.

25.  Defendants solicited Ms. Fallon's help in Indiana so that Defendants could hide their true identities and keep their complicity in this scheme secret.

26.  As a continuing part of the conspiracy and racketeering activities, Defendants intend to have Ms. Fallon accept full and sole responsibility for them in this lawsuit by having Ms. Fallon deny Defendants' involvement.

27.  On or about October 17, 2010, Defendants contacted Lisa Fallon.

28. Defendants invited Ms. Fallon into their conspiracy to defame and otherwise injure the Plaintiff on or about October 17, 2010.

29. Defendants communicated to Ms. Fallon false information about the Plaintiff.

30. Defendants knew information they provided to Ms. Fallon about the Plaintiff was false.

31. At the request of Defendants, and relying on promises from the Defendants, Fallon published a flyer that contained defamatory statements about the Plaintiff.

32. Fallon, at all times material, was acting as an agent of the Defendants, and Fallon was doing that which was within her express, implied, or apparent authority granted to her by Defendants.

33. Sometime after October 17, 2010, the defamatory flyer or some of it was created by the Defendants, and Defendants gave an electronic copy to Ms. Fallon.

34. In the alternative, the defamatory flyer was created by Fallon at the request of the Defendants, with the help of the Defendants, with the information given to Fallon by the Defendants, and with the Defendants' full knowledge of the falsity of the information.

35. Defendants purchased a spreadsheet of over fourteen thousand Wyoming addresses on or about October 25, 2011, from an on-line service.

36. Defendants gave an electronic copy of the spreadsheet of addresses to Ms. Fallon so that she could publish the defamatory flyer.

37. Prior to November 9, 2010, Defendants wired Ms. Fallon money, and Fallon used Defendants' money to pay for the cost to publish the defamatory flyer. Defendant used the mail wire system to deprive and defraud the Plaintiff of money.

38. On or about November 9, 2010, with Defendants' flyer and Defendants' spreadsheet in her possession, Fallon contacted Sharp Printing, Inc., a commercial printing service located in Fishers, Indiana.   Ms. Fallon did these acts with the knowledge and support of the Defendants.

39. Fallon asked the commercial printing service to provide her a cost estimate to print and mail the defamatory flyer to particular addresses in Wyoming.  Ms. Fallon did these acts with the knowledge and support of the Defendants.

40. On or about November 9, 2010, Fallon emailed an electronic copy of Defendants' flyer and an electronic copy of Defendants' spreadsheet of mailing addresses to the commercial printing service in order to obtain an estimated cost to print and mail the flyer to the addresses contained in the spreadsheet. Ms. Fallon did these acts with the knowledge and support of the Defendants.

41. Thereafter, the commercial printing service emailed to Fallon an estimate cost of $5,849.47 to print and mail the flyer via the United States Postal Service to the 14,239 Wyoming addresses included on Defendants' spreadsheet of addresses.  The cost information was shared with the Defendants.

42. All 14,239 addresses provided by the Defendants were Wyoming addresses, the vast majority of which were addresses for residents of the following Wyoming towns: Cody, Worland, Powell, Thermopolis, Greybull, Basin, Lovell, Manderson, Meeteetse, Kirby, Ten Sleep, Frannie, Burlington, Wapiti, Cowley, Shell, Yellowstone, Otto, and Byron.

43. As part of Defendants' conspiracy and scheme, the spreadsheet of addresses was intentionally designed by Defendants to target Plaintiff's existing and potential patient base in Wyoming.

44. Fallon hired the commercial printing service to print and mail the flyer via the United States Postal Service to the 14,239 Wyoming addresses. Ms. Fallon did these acts with the knowledge and support of the Defendants. Defendants intended the mailing would deprive and defraud Plaintiff of money.

45. On or about November 30, 2010, at the direction of Fallon acting as the Defendants' agent, the commercial printing service mailed the flyer via the United States Postal Service to the 14,239 Wyoming households listed on the spreadsheet of addresses provided by Fallon.

46. Fallon personally appeared at the commercial printing service's office in Fishers, Indiana, and paid her invoice with a cashier's check.

47. Fallon's cashier check was drawn from a bank called Old National, Branch No. 202, located at 9765 East 116th Street, Fishers, IN 46037.

48. Fallon paid the commercial printing service a total of $5,849.47 to print and mail the flyer to 14,239 Wyoming households.

49. Beginning on or about December 8, 2010, Plaintiff Jimmie Biles, MD received phone calls from people who had received Defendants' flyer through the United States Postal Service, and these people expressed their understanding of the defamatory material.

50. Plaintiff obtained a copy of the flyer from one of the recipients on December 8, 2010.

51. Defendants' flyer contains false, defamatory statements, and defamatory per se statements about the Plaintiff Dr. Jimmie Biles.

52. Defendants met Ms. Fallon in Montana in 1996, and have been friends since.

53. Defendants Dr. and Mrs. Schneider are the godparents of Ms. Fallon's youngest child.

54. Ms. Fallon has been a guest in Defendants' home in the past, and as recently as October 2011.

55. In the course of their conspiracy and scheme, Defendants communicate with Ms. Fallon by using personal cell phones, hospital phones, personal email addresses, and hospital email addresses.

56. Defendants are paying for Ms. Fallon's attorney in the defamation action entitled, *Biles v. Fallon*, Civil No. 11-CV-294-J.

57. Defendants have offered Ms. Fallon payment for her involvement in this matter.

58. Defendants have agreed to indemnify Ms. Fallon for any liability she may suffer for participating in the conspiracy against Plaintiff Jimmie Biles, MD.

## FIRST CAUSE OF ACTION
### DEFAMATION

59. Plaintiff alleges and incorporates by reference herein, all of the allegations contained in the paragraphs above.

60. Defendants, one or all of them, conspired to and did publish a flyer containing defamatory statements about the Plaintiff to 14,239 Wyoming households.

61. Statements of fact in the flyer are false.

62. Therefore, Defendants made false and defamatory statements of fact concerning the Plaintiff Jimmie Biles, MD.

63. Defendants made an unprivileged publication of the defamatory statements to one or more third parties when they conspired to and did pay a commercial printing service to print and mail the flyers containing the defamatory statements to 14,239 Wyoming households.

64. Defendants' false and defamatory communications contained in the flyer tend to hold Plaintiff Jimmie Biles, MD up to hatred, contempt, ridicule and scorn; and causes the Plaintiff to be shunned and avoided; and tend to injure the Plaintiff's reputation as to diminish the esteem, respect, goodwill, and confidence in which he is held.

65. At the time Defendants conspired to and did publish the defamatory flyer, Defendants knew the material contained in the flyer was false.

66. At the time Defendants conspired to and did publish the defamatory flyer, Defendants acted in reckless disregard of whether the communication was false.

67.  At the time Defendants conspired to and did publish the defamatory flyer, Defendants acted negligently in failing to ascertain whether the communication was false.

68.  Defendants conspired to and did publish the defamatory statements with actual malice, ill will, and spite toward the Plaintiff and with a reckless indifference to the rights of the Plaintiff.

69.  Defendants' false and defamatory communications concerning the Plaintiff constitute defamation per se because the false statements in the flyer impute a criminal offense on to the Plaintiff, Jimmie Biles, MD, and impute conduct, characteristics, and conditions intended to adversely affect the Plaintiff's fitness for the proper conduct of his lawful business, that is, the practice of medicine.

70.  Plaintiff Jimmie Biles, MD suffered a loss and continues to suffer a loss having economic and pecuniary value as a direct and proximate result of the false publication by Defendants.

71.  Plaintiff Jimmie Biles, MD is not a public figure as defined by Wyoming defamation law.

72.  At the time Ms. Fallon published the defamatory statements in the flyer, she was acting in concert with and at the direction of Defendants.

73.  At the time Fallon published the defamatory flyer, she was acting as an agent for Defendants, and doing that which was within her express, implied, or apparent authority granted to her by her principal(s).

74.  Defendants acts were negligent, reckless, intentional, willful, and wanton, and done with malice approaching a crime.

75.  Defendants, acting in a conspiracy, are jointly and severally liable for their tortious and punitive conduct.

76.  Defendants, acting in a conspiracy with Ms. Fallon, are jointly and severally liable for their own and Ms. Fallon's tortious and punitive conduct.

77.  Defendants, as principals, are vicariously liable for the tortious and punitive conduct of their agent, Ms. Fallon.

**SECOND CAUSE OF ACTION**
**JOINT ENTERPRISE**

78.  Plaintiff alleges and incorporates by reference herein, all of the allegations contained in the paragraphs above.

79.  Defendants intentionally and recklessly engaged in a joint enterprise to defame and otherwise injure the Plaintiff through an agreement, either express or implied.

80.  Defendants intentionally and recklessly engaged in a common purpose to defame and otherwise injure the Plaintiff, seeking as a result, an economic gain to be shared among the members of the joint enterprise.

81.  Defendants enjoyed an equal right to a voice in the direction of the enterprise, which gave each Defendant equal right of control.

82.  As a direct and proximate cause of the tortious and punitive conduct and conspiracy between the members of the joint venture, Plaintiff was injured.

83.  Defendants are jointly and severally liable for the injuries caused as a result of their joint venture.

### THIRD CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

84. Plaintiff alleges and incorporates by reference herein, all of the allegations contained in the paragraphs above.

85. The intentional and reckless acts and omissions of the Defendants, as alleged herein, amount to extreme and outrageous conduct, which resulted in severe emotional distress to the Plaintiff Jimmie Biles, MD.

86. Defendants' conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community.

87. As a direct and proximate result of Defendants' intentional infliction of emotional distress on the Plaintiff, the Plaintiff has suffered damages for emotional distress for which the Defendants are responsible.

88. At the time Ms. Fallon intentionally and recklessly published the defamatory statements in the flyer, she was acting in concert with and at the direction of Defendants.

89. At the time Defendant Fallon published the defamatory flyer, she was acting as an agent for Defendants, and doing that which was within her express, implied, or apparent authority granted to her by her principal(s).

90. The acts of Defendants were negligent, reckless, intentional, willful, and wanton, and done with malice approaching a crime.

91. Defendants, acting in a conspiracy, are jointly and severally liable for their tortious and punitive conduct.

92. Defendants, acting in a conspiracy with Ms. Fallon, are jointly and severally liable for their own and Ms. Fallon's tortious and punitive conduct.

93. Defendants, as principals, are vicariously liable for the tortious and punitive conduct of their agent, Ms. Fallon.

### FOURTH CAUSE OF ACTION
### INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS

94. Plaintiff alleges and incorporates by reference herein, all of the allegations contained in the paragraphs above.

95. Plaintiff Jimmie Biles, MD operates a medical practice in Cody, Wyoming and there exists a valid business expectancy.

96. Defendants knew that Plaintiff Jimmie Biles, MD was a medical doctor practicing in Cody, Wyoming.

97. By publishing defamatory and false statements to over 14,239 Wyoming households by using the United States Postal Service, Defendants intentionally and improperly interfered with Plaintiff's medical practice by inducing and causing a disruption, breach, and termination of Plaintiff's business expectancy.

98. As a direct and proximate result of Defendants' intentional interference with and disruption of Plaintiff's business expectancy, Plaintiff Jimmie Biles, MD has suffered damages.

99. At the time Fallon published the defamatory and false statements causing financial injury to the Plaintiff, she was acting in concert with and at the direction of Defendants.

100. At the time Fallon published the defamatory flyer, she was acting as an agent for Defendants, and doing that which was within her express, implied, or apparent authority granted to her by her principal(s).

101. The acts of Defendants were negligent, reckless, intentional, willful, and wanton, and done with malice approaching a crime.

102. Defendants, acting in a conspiracy, are jointly and severally liable for their tortious and punitive conduct.

103. Defendants, acting in a conspiracy with Ms. Fallon, are jointly and severally liable for their own and Ms. Fallon's tortious and punitive conduct.

104. Defendants, as principals, are vicariously liable for the tortious and punitive conduct of their agent, Ms. Fallon.

### FIFTH CAUSE OF ACTION
### CONSPIRACY

105. Plaintiff alleges and incorporates by reference herein, all of the allegations contained in the paragraphs above.

106. It is a federal offense to carry out a scheme to defraud another of money when that scheme involves the United States Postal Service.  18 USC §1341.

107. It is a federal offense to carry out a scheme to obtain money through fraudulent pretenses when that scheme involves transmission by wire, radio, television communication or other

technology in interstate or foreign commerce for the purpose of executing such scheme or artifice. 18 USC § 1343.

108. Defendants conspired to or did violate 18 USC §1341.

109. Defendants conspired to or did violate 18 USC §1343.

110. Defendants' scheme was orchestrated and performed with the intention of causing economic hardship or economic ruin to the Plaintiff.

111. By disturbing or causing interference with Plaintiff's medical practice, Defendants stood to gain an economic advantage through an increased referral business.

112. To disturb or cause the termination or interference of Plaintiff's medical practice, Defendants intentionally set out to destroy Plaintiff's reputation among Plaintiff's potential patient base. The Defendants also sought, thereby, to gain business for their entities.

113. Defendants intentionally schemed to destroy Plaintiff's reputation among 14,239 households in Wyoming that were all geographically located in relative close proximity to the Plaintiff's medical practice.

114. To destroy Plaintiff's reputation among his potential patient base, Defendants intended to deceive Wyoming residents by sending them flyers that contained material and gross misrepresentations about the Plaintiff and his fitness for the practice of medicine.

115. The material and gross misrepresentations Defendants made in the flyer about the Plaintiff were intended to frighten and deter Wyoming people from seeking medical care from the

Plaintiff, such that they would seek medical care from a different practitioner – one unlike Plaintiff that would refer potential neurosurgical patients to the Defendants.

116. Defendants intended for Wyoming people to rely on the material and gross misrepresentations in the flyer, intended for Wyoming people to misperceive the Plaintiff as a "bad" doctor, intended for Wyoming people to distrust the Plaintiff, and intended to convince Wyoming people not to seek medical care from the Plaintiff in order to cause disruption to, or termination of, Plaintiff's medical practice in Cody, Wyoming.

117. Defendants' conspiracy and scheme to deceive Wyoming residents was done with the intention of defrauding the Plaintiff of income such that Plaintiff's economic viability would be jeopardized if not destroyed.

118. In turn, Defendants would gain an economic advantage by benefiting from the increased referral service that Plaintiff refused to give Defendants.

119. In furtherance of their scheme to cause economic hardship or economic ruin to the Plaintiff, Defendants used or caused another to use the United States Postal Service in furtherance of their scheme.

120. In furtherance of their scheme to cause economic hardship or ruin to the Plaintiff, Defendants used or caused another to use wire, email, telephones, cell phones, or other interstate wire technology in furtherance of their scheme.

121. Defendants conspiracy and conduct are in violation of 18 USC 1962(c) and (d).

122. It is unlawful to conduct or participate, directly or indirectly, in the conduct of an enterprise through a pattern of improper activity.

123. It is unlawful to conspire to conduct or participate, directly or indirectly, in the conduct of an enterprise through a pattern of improper activity.

124. Prohibited activity includes acts in violation of 18 USC 1961(1)(B).

125. Defendants, acting as husband and wife and in conjunction with family owned and/or controlled corporations, compose of an enterprise and/or an association-in-fact enterprise.

126. The Defendants, as members of a family and acting as a continuing unit, share common economic goals.

127. The persons liable for the wrongdoing of this enterprise include, John H. Schneider, MD, Michelle R. Schneider, John H. Schneider, Jr., MD, PC, and all other corporate entities or individuals that are owned or controlled by the Schneider family.

128. Defendants engaged in a pattern of activity by their commission of conspiracy to commit illegal acts using the mail and the wires.

129. The Defendants' conspiracy to commit improper acts and/or their actual commission of improper acts, by their nature, are related predicate acts that amount to or pose the threat of continued and repeated illegal activity.

130. The Defendants' conspiracy to commit improper acts and/or their actual commission of improper acts have the same purpose, share the same victim, seek the same result, involved

the same participants, utilized the same method of commission or are otherwise interrelated by distinguishing characteristics and are not isolated events.

131.   The Defendants' conspiracy to commit illegal acts and/or their actual commission of illegal acts involved at least 14,239 transactions of unlawful conduct through the mail system, and a series of unlawful transactions of wire communication through phones and emails in furtherance of their scheme.

132.   Defendants agreed to join the conspiracy, agreed to commit predicate acts, and knew that those acts were part of a pattern of illegal activity.

133.   As a direct and proximate cause of the actions taken by Defendants, Plaintiff has been injured.

134.   Plaintiff is entitled to all damages allowed under 18 USC 1964(c), including treble damages and attorneys' fees.

## DAMAGES

135.   As a direct and proximate result of the defamation per se imputed to Plaintiff Jimmie Biles, MD by Defendants, as described herein, damages to the Plaintiff Jimmie Biles, MD are presumed as a matter of law.

136.   As a direct and proximate result of the negligent, reckless, willful, wanton and intentional conduct of the Defendants as described herein, Plaintiff Jimmie Biles, MD has incurred the following damages:

(a)   General damages, including injury to reputation, loss of credibility among peers, patients, and the public, and all other general damages;

(b)   Verifiable lost business, past and future;

(c)   Loss of profits, past and future;

(d)   Loss of earning capacity;

(e)   Loss of enjoyment of life, past and future;

(f)   Emotional pain and suffering, including anxiety, depression and other mental suffering, past and future;

(g)   Exemplary and punitive damages as a result of the malicious, intentional, willful, wanton and reckless conduct of Defendants as described herein.

(h)   Attorney fees;

(i)   Costs of this action, and such other relief as the Court deems equitable and proper.

(j)   All other damages available under law and equity.

WHEREFORE, Plaintiff requests the following relief:

1.   Judgment against the Defendants for damages presumed as a result of Defendant's defamation per se imputed to Plaintiff Jimmie Biles, MD.

2.   Judgment against the Defendants for general damages in an amount consistent with the allegations contained herein and to be proven at trial.

3.  Judgment against the Defendants for special damages in an amount consistent with the allegations contained herein and to be proven at trial.

4.  Judgment against the Defendants for exemplary and punitive damages in an amount consistent with the allegations contained herein and to be proven at trial.

5.  Judgment against the Defendants for attorneys' fees, costs, interest, and such other and further relief as the Court deems just and reasonable.

DATED this _6th_ day of December, 2011.

_____
R. Daniel Fleck – Wyo, Bar #6-2668
M. Kristeen Hand – Wyo. Bar #6-3544
THE SPENCE LAW FIRM, LLC
15 South Jackson
P.O. Box 548
Jackson, WY  83001
(307) 733-7290
(307) 733-5248 facsimile

*Attorneys for Plaintiff*

## VERIFICATION

I, Jimmie G. Biles, Jr., MD, being first duly sworn upon my oath, state that I am the Plaintiff herein, that I have read the foregoing Complaint and Demand for Jury Trial, and that I know the contents thereof, and to the extent I have personal knowledge of the facts stated therein, they are true and correct.

_____
Jimmie G. Biles, Jr., MD

STATE OF WYOMING       )
ss.
COUNTY OF PARK        )

SUBSCRIBED AND SWORN to before me this _6th_ day of _December_, 2011, by Jimmie G. Biles, Jr., MD.

_____
Notary Public

My commission expires: _June 15, 2015_