R. Daniel Fleck – Wyo. Bar #6-2668
M. Kristeen Hand – Wyo. Bar #6-3544
THE SPENCE LAW FIRM, LLC
15 South Jackson Street
Po Box 548
Jackson, WY 83001
307-733-7290
307-733-5248 (facsimile)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JIMMIE G. BILES, JR., MD, )<br>a resident of Wyoming, )<br>　　　　　　　　　　　　　　 )<br>　　Plaintiff, )<br>　　　　　　　　　　　　　　 )<br>　　vs. )<br>　　　　　　　　　　　　　　 )<br>JOHN HENRY SCHNEIDER, JR., MD, )<br>MICHELLE RENE SCHNEIDER, )<br>husband and wife, both residents of Montana; )<br>JOHN HENRY SCHNEIDER, JR., MD, PC )<br>a Montana corporation; and JOHN DOES I-XXX, )<br>　　　　　　　　　　　　　　 )<br>　　Defendants. ) | **CIVIL NO.** 11-CV-366F |

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS'
RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff, by and through his counsel, R. Daniel Fleck and M. Kristeen Hand of THE SPENCE LAW FIRM, LLC, opposes Defendants' Motion to Dismiss (Doc No. 8). Defendants' Motion to Dismiss Plaintiff's RICO civil claim (Racketeer Influenced and Corrupt Organizations Act, 18 USC §1964(c)) should be denied entirely.[1] The Complaint states a RICO claim upon

---

[1] Defendants do not seek dismissal of Plaintiff's other well-pled claims for defamation, intentional infliction of emotional distress, intentional interference with economic relations, and joint venture.

which relief can be granted.  Pursuant to U.S.D.C.L.R. 7.1(a), Plaintiff requests oral argument if the Court deems oral argument to be helpful.

### INTRODUCTION

As the Complaint states, Defendants violated laws of the United States, including mail fraud and wire fraud.  It is a federal offense to conspire to and carry out a scheme to defraud another when that scheme involves the United States Postal Service and/or interstate communication by wire, email or other technology for the purpose of executing such scheme.  18 USC § 1341 and 1342.  The Defendants racketeering activities and conspiracy to commit racketeering activities are actionable pursuant to the Racketeer Influenced Corrupt Organizations Act.  18 USC §1962(c) and (d); 1964(c).  This Court has federal-question jurisdiction over RICO civil actions pursuant to 28 USC §1331.

Defendants conspired to and did use the U.S. postal service and interstate wire communications between Wyoming, Montana and Indiana with the intention of causing economic ruin to the Plaintiff.  Defendants schemed with their friend in Indiana to purposefully destroy Plaintiff's reputation and ruin his ability to practice medicine by publishing lies about the Plaintiff in flyers sent through the U.S. mail to 14,239 Wyoming households.  As a continuing part of the conspiracy and illegal activities, Defendants intend to have their friend in Indiana accept sole responsibility for them by having Ms. Fallon deny Defendants' involvement.  To the extent Ms. Fallon's denial is untrue, it evidences further abuse of the legal process by the Defendants.  There is no flaw in the Complaint.  Defendants have not demonstrated any legal basis to dismiss the RICO claim or to remove this case to state court.  Their Motion to Dismiss must be denied.

## FACTS ALLEGED IN THE COMPLAINT ARE ADMITTED

Plaintiff Jimmie G. Biles, Jr., MD is an orthopedic surgeon practicing medicine in Cody, Wyoming. (Plaintiff's Complaint, Doc No. 1, ¶1 and 12). Defendant John H. Schneider is neurosurgeon practicing medicine in Cody, Wyoming and Billings, Montana. (¶11).[2] Dr. Schneider's wife, Michelle R. Schneider, is a named co-conspirator and defendant, as is Dr. Schneider's professional corporation, Defendant John H. Schneider, Jr. MD, PC. (¶ 4, 5-9).[3]

Defendants, one or all of them, set out on a course of conduct with the intention of publishing thousands of false statements about the Plaintiff in a calculated attempt to destroy the Plaintiff's credibility as a medical doctor, destroy his reputation in the community, and destroy his medical practice. As part of the fraudulent conspiracy and corrupt scheme, Defendants used

---

[2] John and Michelle Schneider insist they are residents of Wyoming not Montana. Though the Defendants' domicile is debatable (it is believed they own a home in Montana, practice medicine in Montana, and have in the past acquired Montana hunting licenses as Montana residents), it does not matter today because diversity jurisdiction is not the controlling basis for this Court's jurisdiction over this suit. This Court has federal-question jurisdiction as a result of the RICO cause of action (28 USC §1331) and supplemental jurisdiction over the state law claims (28 USC §1367).

[3] While it appears true – as Defendants point out in their Brief – that Dr. John Schneider dissolved his Montana professional corporation just days before Plaintiff's statute of limitations had run, it is not true that a defunct corporation is immune from suit or otherwise improperly brought into this case as Defendants allude. Plaintiff alleges that John Schneider Corp is individually, jointly and severely liable as a co-conspirator and vicariously liable for the negligent and intentional actions taken by its principal, Defendant John Schneider, during the life of the corporation. (Doc 1, ¶ 5-9). Just because John Schneider dissolved his corporation on the eve of the statute of limitations does not mean the corporation can escape liability for improper actions taken by its principle while the corporation was active. Nor does it mean the corporation is immune from it's conduct as a co-conspirator. It is not clear why Defendants make an issue of the fact the corporation was dissolved before suit was filed. What matters is that John Schneider Corp is a proper Defendant and member of the conspiracy and joint venture to economically ruin the Plaintiff. Additionally, no attorney has entered an appearance on behalf of Defendants Schneider Corp. Any argument on behalf of Schneider Corp. without an entry of appearance should be stricken.

the United States Postal Service 14,239 times, and communicated countless times with each other between Wyoming, Montana and Indiana through wire services such as email, electronic stick-drives, cell phones, hospital telephones and/or fax machines.

Defendants met Ms. Fallon in Montana in 1996, and have been friends since. (¶52). Defendants Dr. and Mrs. Schneider are the godparents of Ms. Fallon's youngest child. (¶53). On or shortly after October 17, 2010, Defendants contacted Lisa Fallon with the intention of using her to help them publish a flyer that Defendants knew contained false statements about the Plaintiff. (¶ 24). Defendants solicited Ms. Fallon's help in Indiana so that Defendants could hide their true identities and keep their complicity in this scheme secret. (¶25). As a continuing part of the conspiracy and racketeering activities, Defendants intend to have Ms. Fallon accept full and sole responsibility for them in this lawsuit by having Ms. Fallon deny Defendants' involvement. (¶26).

On October 25, 2010, Defendants paid an on-line service to create a spreadsheet of over fourteen thousand Wyoming addresses. (¶35). All 14,239 addresses purchased by the Defendants were Wyoming addresses intentionally targeting Plaintiff's existing and potential patient base in northwest Wyoming. (¶42-43). Defendants gave an electronic copy of the spreadsheet of addresses to Ms. Fallon on a stick-drive so that she could publish the defamatory flyer from Indiana. (¶36). Defendants communicated information to Ms. Fallon about the Plaintiff, knowing the information they provided was false. (¶29-30).

On or about November 9, 2010, with Defendants' flyer and Defendants' spreadsheet in her possession, Fallon contacted a commercial printing service located in Fishers, Indiana. Ms. Fallon did these acts with the knowledge and support of the Defendants. (¶38). The commercial printing service emailed to Fallon an estimate cost of $5,849.47 to print and mail the flyer via the

United States Postal Service to the 14,239 Wyoming addresses included on Defendants' spreadsheet of addresses.  The cost information was shared with the Defendants.  (¶41).  At the request of Defendants, and relying on promises from the Defendants, 14,239 copies of the defamatory flyer were mailed via the United State's Postal Service to Plaintiff's existing and potential patient base.  (¶45).  Defendants wired Ms. Fallon money, and Fallon used Defendants' money to pay for the cost to publish the defamatory flyer.  (¶37).

Beginning on or about December 8, 2010, Plaintiff Jimmie Biles, MD received phone calls from people who had received Defendants' flyer through the United States Postal Service, and these people expressed their understanding of the defamatory material.  (¶49).  Plaintiff obtained a copy of the flyer from one of the recipients on December 8, 2010.  (¶50).  Defendants' flyer contains false, defamatory statements, and defamatory per se statements about the Plaintiff Dr. Jimmie Biles.  (¶51).

In the course of their conspiracy to commit mail fraud and wire fraud, Defendants communicated with Ms. Fallon by using personal cell phones, hospital phones, personal email addresses, hospital email addresses and/or fax machines.  (¶55).  Defendants are paying for Ms. Fallon's attorney in the defamation action entitled, *Biles v. Fallon*, Civil No. 11-CV-294-J.  (¶56).  Defendants have offered Ms. Fallon payment for her involvement in this matter, and Defendants have agreed to indemnify Ms. Fallon for any liability she may suffer for participating in the conspiracy against Plaintiff Jimmie Biles, MD.  (¶57-58).  It is believed Defendants continue to use wire services to communicate with Ms. Fallon in furtherance of their illegal attempt to keep their identities and involvement secret.  Defendants intended to and did use the mail and wire systems to deprive and defraud the Plaintiff.  (¶37 and ¶44).

Defendants' misplaced argument that the Complaint is based only on conclusory allegations evidences Defendants' desperate attempt to reach for anything to escape liability. This case should not be dismissed. The Complaint is detailed and specific, and is based on allegations supported by alleged facts. It states a factual and legal claim upon which relief may be granted. Defendants' have not met their burden to show beyond doubt the Plaintiff has no claim.

### STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

For Defendants to meet their burden, "it must appear **beyond doubt** that the Plaintiff can prove no set of facts that would entitle him to relief." *Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738 (1976) (emphasis added); *Chavez v. City of Santa Fe Housing Authority*, 606 F.2d 282 (10th Cir. 1979). All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true. *Mitchell v. King*, 537 F.2d 385 (10th Cir. 1976). All

reasonable inferences must be indulged in favor of the plaintiff, *Id.*, and the pleadings must be liberally construed. *Gas-a-Car, Inc. v. American Petrofina, Inc.*, 484 F.2d 1102 (10th Cir. 1973).

Defendants have the burden to convince this Court that "[e]ven if all of plaintiff's allegations are true, the Court can envision no set of facts, which, if further established, might support the plaintiff's claims." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

### THE COMPLAINT STATES A RICO VIOLATION

In general, civil RICO provides a private cause of action against persons who engage in or conspire to engage in a pattern of racketeering activity. 18 USC § 1961-1968. Whenever a pattern of racketeering activity is involved, it is unlawful for any person to conduct, conspire to, or participate in any such racketeering activity. 18 USC §1962(c) and (d). Racketeering activities consist of performance of certain listed predicate acts. 18 USC 1961(A). The list of predicate acts encompasses any act that is indictable under specified sections in title 18 of the United States Code, including mail and wire fraud.[4] 18 USC §1961(B).

This action is brought pursuant to 18 USC §1964(c), which authorizes a private suit by "[a]ny person injured in his business or property by reason of a violation of 18 USC §1962." 18 USC §1964(c). "Section 1962 in turn makes it unlawful for "any person" – not just mobsters – to . . . conduct an enterprise through a pattern of racketeering activity. 18 USC §1962(c). *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985). "RICO is to be liberally construed to effectuate its remedial purposes. The statute's remedial purposes are nowhere more evident than in the provision of a private action for those injured by racketeering activity." *Id*. at 498 (citations and quotations omitted).

---

[4] Other predicate acts include obstruction of justice (18 USC § 1503), tampering with a witness (18 USC §1512), and bribery (18 USC §201), all three of which may eventually play a role in this case as discovery commences though not the predicate acts at issue today.

Defendants thinly attack Plaintiff's RICO claim, arguing incorrectly the Complaint – on its face and taken as true – does not establish the predicate acts of mail fraud or wire fraud. In particular, Defendants argue mail fraud and wire fraud are not sufficiently pled because the Complaint does not "establish any identifiable injury to the Plaintiff's business or property," (Doc No. 31, Defs' Brief at 5); that Defendants "have nothing to gain economically from injuring the Plaintiff," (Id.); that Defendants did not intend to hurt the Plaintiff because "any scheme to defraud is a scheme instigated by Fallon" as she has apparently accepted sole responsibility for creating and mailing the flyer, (Id. at 7-8); and that Defendants' wire communications from Wyoming and Montana with Ms. Fallon in Indiana are somehow not interstate for the purposes of wire fraud. (Id. at 9).

Federal mail fraud is illegal and defined by statute at 18 USC § 1341. The Tenth Circuit has articulated: "'The elements of federal mail fraud as defined in 18 U.S.C. § 1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme.'" *United States v. Schuler*, 458 F.3d 1148, 1152 (10th Cir. 2006) (*quoting United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir.2003)).

Federal wire fraud is illegal and defined by statute at 18 USC § 1343. Wire fraud has exactly the same elements except for the last element, which instead calls for "the use of interstate wire or radio communications to execute the scheme – that is, the use of interstate wire or radio communications, instead of the mails, to execute the scheme. *United States v. Cooper*, 654 F.3d 1104, 1116 (10th Cir. 2011)(*quotations omitted*).

Plaintiff's Complaint sufficiently alleges the Defendants' violated at least two of RICO's predicate acts – §1341 (mail fraud) and §1343 (wire fraud). Each predicate act is set forth in the

Complaint through allegations of Defendants' interstate wire communications and 14,239 mail transfers designed to further the Defendants' scheme. Thus, the mail and wire fraud predicate acts are sufficiently pled in that they set forth the elements of the offenses charged, and provide Defendants fair notice of the charges against them. *See, U.S. v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003). Plaintiff further alleges that he has been injured as a result of Defendants' racketeering activities and/or conspiracy to commit racketeering activities, and therefore, Defendants are liable pursuant to civil RICO. 18 USC §1962(c) and (d); §1964(c).

Defendants violated the mail and wire fraud statutes, which are predicate acts of racketeering activities pursuant to RICO. Plaintiff has alleged his business was injured as a result of Defendants' racketeering activities. Defendants claim RICO foists upon the Plaintiff a duty to allege injury to something other than his business, but there is no requirement to allege some kind of special "racketeering injury." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985).

  1. ***The Complaint establishes an identifiable injury to Plaintiff's business.***

Defendants do not claim Plaintiff has failed to plead conspiracy or scheme to use the wires and the U.S. mail; they claim instead that Plaintiff has no property right to the economic viability of his medical practice and that injury to Plaintiff's business is not enough to satisfy mail and wire fraud's pleading requirements. Defendants' position is untenable in the face of the well-pled Complaint.

Defendants admit that fraud is measured by a departure from community standards of fair play and candid dealings. (Doc. No. 31, Defs' Brief at 6)(*citing United States v. Schwab,* 88 F.Supp.2d 1275, 1283 (D. Wyo. 2000). Defendants also agree that the phrase "to defraud" refers to wronging one in his property rights by dishonest methods or schemes. (Id.)(*citing U.S. v.*

*Schwab*, 88 F.Supp.2d at 1283). They admit that a medical license is an established property right. (Doc No. 31, Defs' Brief at 6). How Defendants reach the conclusion that the economic viability of Plaintiff's medical practice is not an injury to his business, is unknown and not supported by authority. Plaintiff has pled the elements of mail and wire fraud as required by the Tenth Circuit, and has pled injury to Plaintiff's business as a result of Defendants' racketeering activities.

This entire case is about Defendants' intent to defraud Dr. Biles of his medical practice. Defendants created an elaborate scheme to have their friend in Indiana secretly conspire with them to economically ruin the Plaintiff's reputation and his medical practice along with it. The Complaint establishes an artifice or scheme to defraud the Plaintiff out of his ability to earn a living as a medical doctor. For example, it is pled that Defendants' scheme was orchestrated and performed with the intention of causing economic hardship or economic ruin to the Plaintiff. (Doc. 1, Complaint at ¶ 110). To meet their dishonest goal, the Defendants set out to destroy Plaintiff's reputation among the people of the Big Horn Basin. (Id. at ¶ 112). Defendants' conspiracy and scheme to deceive Wyoming residents was done with the intention of defrauding the Plaintiff of income such that Plaintiff's economic viability would be jeopardized if not destroyed. (Id. at ¶117). The Defendants' conspiracy to commit illegal acts and/or their actual commission of illegal acts involved at least 14,239 transactions of unlawful conduct through he mail system, and a serious of unlawful transactions of wire communications through phones and emails in furtherance of their scheme. (Id. ¶ 131). As a direct and proximate cause of the actions taken by the Defendants, Plaintiff has been injured. (Id. at ¶ 133). Plaintiff seeks damages including verifiable lost business, past and future; loss of profits, past and future; and all remedies available to him pursuant to 18 USC § 1964(c). (Id. at ¶¶134, 136(b) and (c)).

Defendants devote one-sentence to their "racketeering injury" argument, proclaiming that Plaintiff has no tangible property right to the economic viability of his medical business in the past or the future; and because of that, Plaintiff has not pled the predicate act of fraud, and his entire RICO suit should be dismissed. Defendants' argument is juxtaposed to precedent. A RICO plaintiff will recover to the extent that he has been injured in his **business or property** by the conduct constituting the predicate act violation. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (emphasis added).

To sufficiently plead a civil RICO cause of action, a plaintiff must establish injury of the type the underlying predicate acts (mail fraud and wire fraud) were meant to deter and nothing more. "Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." *Id*. at 497. "[W]e perceive no distinct 'racketeering injury' requirement. Given that 'racketeering activity' consists of no more and no less than commission of a predicate act, § 1961(1), we are initially doubtful about a requirement of a 'racketeering injury' separate from the harm from the predicate acts." *Id.* at 495. Therefore, "[i]f . . . the racketeering activities injure the plaintiff in his business or property, the plaintiff has a claim under § 1964(c). There is no room in the statutory language for an additional, amorphous "racketeering injury" requirement." *Id.*

In the context of mail and wire fraud indictments, allegations of actual injury to the Plaintiff are not necessary, but instead – if pled – serve to evidence intent to defraud.

> The notion of harm in a mail or wire fraud prosecution is important only in the sense that proof of contemplated or actual harm to the victim or others is one means of establishing the necessary intent to defraud. *See, e.g., United States v. Cochran*, 109 F.3d 660, 665 (10th Cir.1997) (acknowledging "that where actual harm exists as a natural and probable result of a scheme, fraudulent intent may be inferred"); *United States v. Bowen*, 946 F.2d 734, 737 (10th Cir.1991) (noting that proof of loss

may bear on the question of intent to defraud); *see also United States v. Fernandez*, 282 F.3d 500, 507 (7th Cir.2002) (Government need not establish a " 'contemplated harm to a victim' " to establish fraudulent intent); *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir.1994) ("When the 'necessary result' of the actor's scheme is to injure others, fraudulent intent may be inferred from the scheme itself.").

*United States v. Welch*, 327 F.3d 1081, 1104-07 (10th Cir. 2003).

Plaintiff has alleged injury to his business as a result of Defendants' racketeering activities (including wire and mail fraud), which satisfies the pleading requirements for a civil RICO claim. As pled, Defendants schemed to economically ruin the Plaintiff's medical business by using the mail and interstate wire communications. Therefore, the Complaint satisfies the elements of mail and wire fraud and alleges that Plaintiff has been injured in his **business or property** by the conduct constituting the predicate act violation. The Complaint establishes injury to the Plaintiff upon which civil RICO relief can be granted.

### 2. *The Complaint alleges that Defendants stood to gain economically from injuring the Plaintiff even though this element is not a necessary RICO element.*

It is argued that Plaintiff has not alleged Defendants stood to gain economically from their scheme; and therefore, the Complaint is flawed. Defendants argument fails for two reasons: First, to establish a civil RICO claim based on wire and mail fraud it is not necessary to plead that the Defendants would financially benefit from their fraudulent scheme. And second, Defendants did stand to gain economically from injuring the Plaintiff, and those facts, though not necessary, are well-pled and further evidence Defendants' ill intentions.

Defendants offer no authority for their position that they had to gain economically in order for a RIOC claim to survive. Completely defeating Defendants' argument is United States Supreme Court precedent: "RICO does not require proof that either the racketeering enterprise or the predicate acts of racketeering were motivated by an economic purpose." *Scheidler v. Nat'l*

*Org. for Women, Inc.*, 537 U.S. 393, 398-99 (2003).  The injury necessary for a RICO claim to survive is injury to the Plaintiff's business or property that occurs as a result of Defendant's commission of racketeering activities (involving illegal mail and wire fraud). A RICO plaintiff can recover to the extent that he has been injured in his ***business or property*** by the conduct constituting the violation.  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)(emphasis added). With respect to the underlying conduct constituting the violation, i.e., mail fraud and wire fraud, the Tenth Circuit has rejected Defendants' argument that the Complaint must allege and intent to achieve personal gain.

> We likewise reject Defendants' argument that the mail and wire fraud counts must allege an intent to achieve personal gain. Such intent, like the intent to harm, is not an element of the mail or wire fraud statute.  Like proof of harm, proof of potential, actual, or contemplated gain simply is one means of establishing the necessary intent to defraud.

*United States v. Welch*, 327 F.3d 1081, 1104-07 (10th Cir. 2003)(citations omitted).

Even though unnecessary to maintain a RICO action, it is factually significant that Defendants stood to benefit from Plaintiff's demise.  By disturbing or causing interference with Plaintiff's medical practice, Defendants stood to gain an economic advantage through an increased referral business.  (Doc. No. 1, Complaint, ¶111-112).  The material and gross misrepresentations Defendants made in the flyer about the Plaintiff were intended to frighten and deter people from seeing medical care from the Plaintiff, such that they would seek medical care from a different practitioner who would refer potential neurosurgical patients to the Defendants. (Id. at ¶ 115).  In turn, Defendants would gain an economic advantage by benefiting from the increased referral service that Plaintiff refused to give Defendants.  (Id. at ¶ 118).

It is important to point out that Defendants' assertion that they had no economic incentive driving their scheme to ruin the Plaintiff's business is exactly opposite the position Defendants previous took in prior pleadings to this Court. For example, in their Brief here, Defendants acknowledge they practice neurosurgery, whereas Plaintiff practices orthopedic surgery. Consequently, Defendants claim it is impossible for Plaintiff to prove they had an economic interest in ruining the Plaintiff. But in a prior pleadings, Defendants identified themselves as competitors with the Plaintiff: "The subpoenas offer no explanation as to why private financial information of Movants should be disclosed to Plaintiff, *who is a competing physician*, or his lawyers." (Doc No. 17, Schneiders' Motion to Quash Subpoena filed in *Biles v. Fallon*, 11CV0294F at p. 3) (emphasis added). Not only does this statement evidence some acknowledgment on Defendants' part of their economic motive to ruin the Plaintiff's medical practice, Defendant's desire to blow hot and cold in pleadings filed with this Court underscores the lack of veracity in the defense.

Civil RICO does not require the Defendants to profit from the scheme; they can be held accountable pursuant to RICO even when their scheme is unprofitable or unsuccessful. However, as pled, Defendants stood to gain economically from the demise of the Plaintiff's business.

3. ***The Complaint establishes Defendants' intent to defraud the Plaintiff, which is evidenced in part by Ms. Fallon's protection of the Defendants.***

Defendants claim that their intent to defraud the Plaintiff is defeated by Ms. Fallon's desire to protect the Defendants by hiding their identities. This is a factual argument that is inappropriate for a motion to dismiss. Even so, as pled in the Complaint, Ms. Fallon's protection

of the Defendants is part of the evidence of conspiracy and scheme, part of the evidence of enterprise, and part of the evidence intent to defraud the Plaintiff (Doc No. 1, ¶ 25-26).

Evidence of Defendants intent to defraud is vast and well-pled. Defendants purchased a 14,239 household mailing list and gave it to Ms. Fallon days before she contacted the Indiana printing company to mail the defaming flyer. (Doc. No. 1, Complaint at ¶ 35-36). The list was created for and purchased by the Defendants for the very purpose of sending a flyer to thousands of Wyoming people nearest in geographic location to the Plaintiff and his business. (¶ 42-43) The flyer contains lies about the Plaintiff – lies particularly intended to frighten and deceive Wyoming people such that they would believe Plaintiff a dangerous doctor. (¶ 116). As pled, Defendants fed Ms. Fallon lies about the Plaintiff, and those lies ended up in 14,239 Wyoming households -- not by any accident or oversight.

In recognizing that a defendant's reckless indifference to the truth of a representation may establish the intent to defraud under § 1341, the Tenth Circuit noted:

> "A variety of circumstantial evidence has been held relevant to infer fraudulent intent. Intent may be inferred from evidence that the defendant attempted to conceal activity. Intent to defraud may be inferred from the defendant's misrepresentations, knowledge of a false statement as well as whether the defendant profited or converted money to his own use."

*United States v. Welch*, 327 F.3d 1081, 1104-07 (10th Cir. 2003)(*quoting, United States v. Prows*, 118 F.3d 686, 692 (10th Cir.1997). "Thus, the intent necessary to a mail or wire fraud conviction is not the intent to harm." *Id*; s*ee also, United States v. Hollis*, 971 F.2d 1441, 1452-53 (10th Cir.1992) (refusing to equate an intent to defraud with an intent to cause "financial" harm).

Defendants hope for Ms. Fallon to take the blame for what they did and hide the truth about their involvement. As alleged in the Complaint, Defendants' cover-up is part of the scheme to defraud.[5] (Doc. No 1 at ¶ 25-26). This is a factual area of inquiry for discovery, and if Defendants have obstructed justice or tampered with a federal witness, those statutory predicate acts are prohibited pursuant to RICO and may prove to further evidence Plaintiff's RICO civil claim. The point here is that were Ms. Fallon to deny Defendants' involvement in the conspiracy, it is expected, and has been identified as a factual basis supporting the conspiracy and scheme orchestrated by the Defendants. Her testimony – whether she admits or denies Defendants' involvement – is not grounds for dismissal of Plaintiff's case.

Focusing on the question at hand, Plaintiff's Complaint demonstrates Defendants intent to defraud the Plaintiff. Defendants' hope that Ms. Fallon denies their involvement is a factual question certain to flush out in discovery, but certainly not grounds to dismiss Plaintiff's RICO claim for failure to state Defendants' intent in the Complaint.

### 4. *The Complaint establishes the wire communications between Defendants and Ms. Fallon crossed interstate lines.*

Defendants suggest that Plaintiff has failed to plead their wire communications were interstate, but that argument is defeated on its face. As pled, Defendants used email, cell phones,

---

[5] Ms. Fallon has given testimony in the federal case pending against her. Her lawyer has agreed to seal her deposition transcript and sequester her testimony from her alleged co-conspirators. This Court, by the Honorable Judge Johnson, requested and was provided a copy of her sealed transcript in the context of the *Biles v. Fallon* matter. Defendants claim they have knowledge of Ms. Fallon's testimony – which would indicate some violation of the sequestration agreement. Their desire to see Ms. Fallon's transcript underscores how desperately Defendants want to know what Ms. Fallon has said so that they may have the chance get their stories straight before they are deposed. As the Court is aware, Plaintiff and Defendant Fallon jointly agreed to sequester the co-conspirators. A motion and order confirming that agreement has been filed with the Court at the Court's request.

hospital phones, stick drives and other wire technology to further their conspiracy. (Doc. No. 1, Complaint, ¶ 55). Ms. Fallon lives and works in Indiana. (Id. at ¶). Defendants live and work in Montana and Wyoming. (Id. at ¶ 23). Their communications crossed state lines. Their communications were interstate. Defendants cite no authority for their contention that emails, phone calls and other wire communications between citizens of different states are somehow not interstate for the purpose of committing wire fraud. Wire fraud is properly pled in Plaintiff's Complaint.

## CONCLUSION

It is Defendants' burden to prove "beyond doubt" that the allegations in the complaint – taken as true and in the light most favorable to Plaintiff – can never state a claim of relief. Defendants have not demonstrated *any* flaw in the Complaint. The Complaint details the illegal wire and mail fraud engaged in by the Defendants with their family friend in Indiana, Ms. Fallon, and the scheme intended to economically ruin a medical doctor and his medical practice in Wyoming. As pled, Defendants violated laws of the United States, including mail fraud and wire fraud, and that violation injured the Plaintiff's business, giving this Court federal-question jurisdiction over this civil RICO civil action pursuant to 28 USC §1331.

WHEREFORE, Plaintiff requests Defendants' Motion to Dismiss be DENIED entirely.

DATED this 16th day of February, 2012.

>/s/ M. Kristeen Hand
> M. Kristeen Hand – Wyo. Bar #6-3544
> R. Daniel Fleck – Wyo. Bar #6-2668
> THE SPENCE LAW FIRM, LLC
> 15 South Jackson
> P.O. Box 548
> Jackson, WY 83001

        (307) 733-7290
        (307) 733-5248 facsimile

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of February, 2012, the undersigned filed the foregoing PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which sent notification of such filing upon all attorneys of record including:

Laurence W. Stinson, Wyo. Bar #6-2918
Bonner Stinson P.C.
1421 Rumsey Avenue
Cody, Wyoming  82414
Tel:  307.587.0300
Fax:  307.527.6092
Email:  Laurence@bonnerstinsonpc.net

*Attorney for John and Michelle Schneider*

        /s/ M. Kristeen Hand
        M. Kristeen Hand – Wyo. Bar #6-3544
        R. Daniel Fleck – Wyo. Bar #6-2668
        THE SPENCE LAW FIRM, LLC
        15 South Jackson
        P.O. Box 548
        Jackson, WY  83001
        (307) 733-7290
        (307) 733-5248 facsimile

        William L. Simpson – Wyo. Bar #5-2189
        SIMPSON, KEPLER & EDWARDS, LLC
        P.O. Box 490
        Cody, WY  82414-0490
        (307) 527-7891
        (307) 527-7897 facsimile

*Attorneys for Plaintiff*