Laurence W. Stinson
Wyoming State Bar #6-2918
BONNER STINSON P.C.
1421 Rumsey Avenue
Cody, Wyoming 82414
307.587.0300
Fax: 307.527.6092
Email: laurence@bonnerstinsonpc.net
ATTORNEY FOR DEFENDANTS SCHNEIDER

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| JIMMIE G. BILES, JR., MD, a resident of Wyoming, | ) ) ) |
| Plaintiff, | ) Case No. 11-CV-366F ) |
| vs. | ) ) |
| JOHN HENRY SCHNEIDER, JR., MD, MICHELLE RENE SCHNEIDER, husband and wife, both residents of Montana; JOHN HENRY SCHNEIDER, JR., MD, PC a Montana corporation; and JOHN DOES I-XXX | ) ) ) ) ) ) |
| Defendants. | ) ) |

# ANSWER AND COUNTERCLAIM OF DEFENDANTS JOHN HENRY SCHNEIDER, JR., MD, MICHELLE RENE SCHNEIDER, AND JOHN HENRY SCHNEIDER, JR., MD, PC

COMES NOW the Defendants, JOHN HENRY SCHNEIDER, JR., MD, and

MICHELLE RENE SCHNEIDER, husband and wife, (sometimes referred to as "Schneiders") and JOHN H. SCHNEIDER, JR., MD, PC, (sometimes referred to as "Schneider PC") by and through their attorneys, Bonner Stinson, P.C., Cody, Wyoming, and answer the complaint filed against them, as follows:

1. Paragraph 1 of Plaintiff's complaint does not call for a response from Defendants.

2. Paragraphs 2 and 3 of Plaintiff's complaint are denied. Schneiders are residents of Park County, Wyoming.

3. Paragraph 4 of Plaintiff's complaint is admitted.

4. Paragraphs 5 through 9 are denied.

5. Paragraph 10 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 10 are denied.

6. Paragraph 11, as written, is denied.

7. Paragraph 12 of Plaintiff's complaint does not call for a response from Defendants. To the degree a response is required, the allegations in paragraph 12 are admitted.

8. Paragraph 13 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 13

are denied. Defendants will answer the complaint as it is written and understand the word "Defendants" as jointly meaning all three defendants.

9. Paragraph 14 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 14 are denied.

10. Paragraphs 15 through 18 are denied.

11. Paragraph 19 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 19 are denied.

12. Paragraphs 20 through 26 are denied.

13. Defendants are without sufficient knowledge to admit or deny the allegation in paragraph 27 and, therefore, deny the same.

14. Paragraphs 28 and paragraphs 31 through 34 are denied.

15. Paragraphs 29 and 30 do not explain what false information is alleged to have been transmitted and Defendants are without sufficient knowledge to admit or deny the same and, therefore, deny the same.

16. Paragraphs 35 through 45 are denied as written.

17. Paragraphs 46 through 50 do not appear to call for a response from these Defendants or state information to which Defendants have knowledge. To the

degree a response is required, the allegations in paragraphs 45 through 50 are denied.

18. Paragraph 51 is denied.

19. Paragraphs 52 through 54 as written are denied.

20. Paragraphs 55 through 58 are denied.

21. Paragraph 59 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 59 are denied.

22. Paragraphs 60 through 77 are denied.

23. Paragraph 78 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 78 are denied.

24. Paragraphs 79 through 83 are denied.

25. Paragraph 84 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 84 are denied.

26. Paragraphs 85 through 93 are denied.

27. Paragraph 94 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 94 are denied.

28.     Paragraphs 95 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 95 are denied as to valid business expectancy and admitted as to Plaintiff being a medical doctor who is believed to be a shareholder in a medical practice.

29.     To the degree a response is required, the allegations in paragraph 96 are denied as written.

30.     Paragraphs 97 through 104 are denied.

31.     Paragraph 105 does not appear to call for a response from these Defendants. To the degree a response is required, the allegations in paragraph 105 are denied.

32.     Paragraphs 106 through 107 do not appear to call for a response from these Defendants and, instead, state Plaintiff's legal conclusions.

33.     Paragraphs 108 through 121 are denied.

34.     Paragraphs 122 through 124 do not appear to call for a response from these Defendants and, instead, state Plaintiff's legal conclusions.

35.     Paragraphs 125 through 134 are denied.

36.     Paragraphs 135 through 136, including all subparts, are denied.

37.     Any allegation not specifically admitted is denied.

## AFFIRMATIVE DEFENSES

38. As an affirmative Defense, Defendants state that Plaintiff's complaint fails to state a cause of action on which Plaintiff can recover any relief for, among other reasons, the following:

   a. Plaintiff has taken the deposition of Lisa Shaurette Fallon in the related case of Biles v. Fallon. Ms. Fallon has testified that she, and she alone, created the flier of which Plaintiff complains is defamatory. Thus, Plaintiff has obtained testimony under oath that contradicts and dispels the allegations contained in Plaintiff's complaint. As a result, the allegations contained within the complaint are known to be untrue by Plaintiff and are not made in good faith. Rather, such allegations are made as part of long-standing animosity Plaintiff has for John Schneider.

   b. Plaintiff has not genuinely suffered any financial harm as a result of the flier of which he now complains.

39. Plaintiff's action is barred by truth because the allegations regarding Plaintiff contained in the flier are largely true in that Plaintiff has been sued several times, Plaintiff was drinking alcohol and driving, Plaintiff plead guilty to driving under the influence (the exact BAC unknown because Plaintiff refused to undergo the BAC examination and, therefore, voluntarily lost his driver's license

instead), upon information and belief Plaintiff has engaged in unlawful possession of controlled substances, and Plaintiff has had poor surgical outcomes.

40. The allegations that may be untrue in the flier do not rise to defamation and/or defamation per se.

41. Plaintiff is a public figure in Cody, Wyoming and the Basin.

42. Plaintiff's action is barred by consent. Plaintiff is responsible for further dissemination and circulation of information within the flier he claims is defamatory by talking to clients/patients and others about the flier, sending out thank you notes to those who voiced their support of him, and making the matter a public matter by talking to the paper, hiring a lawyer, and then bringing not one, but two, lawsuits regarding the flier, and filing neither lawsuit under seal.

43. Plaintiff's action is barred by estoppel because:

   a. Plaintiff has voluntarily injected himself into the controversy by drinking alcohol and driving. This is a course of conduct that is illegal and is bound to invite attention and comment as Plaintiff is a prominent orthopedic surgeon practicing within the area he was arrested. Park County, Wyoming uses a public booking system that displays photographs and charges of people arrested. For these reasons, and others, Plaintiff voluntarily made himself a public figure by drinking alcohol and driving.

b. Plaintiff is himself responsible for negative public perceptions regarding him and his personality because Plaintiff is known to and/or has: often consumed alcohol while driving; consumed alcohol while driving with employees while engaged in the course and scope of business; allows or has allowed his wife - a non-medically trained individual - to provide point of contact care for his patients (and may bill Medicare, Medicaid and/or insurance companies for these services); engaged in medical decision-making while under the influence of alcohol; bad-mouths other physicians and medical personnel; engages in subversive conduct toward other physicians; creates conflict with his employees and the employees of other physicians; waived a gun around his office and pointed that gun at an employee and commanded that the employee "dance"; fails to pay people who provide goods and services at the ranch owned by Plaintiff (or a company he controls); has failed to uphold or fulfill contractual obligations and commitments to parties connected to ranch activities and/or business ventures and other acts which create and foster the bad reputation he created for himself.

44. Plaintiff's lawsuit is barred by unclean hands and other equitable doctrines of fairness because Plaintiff's motivation to sue Schneiders – after another individual admitted under oath to creating and distributing the flier – is not the flier itself, but is Plaintiff's long standing animosity and jealousy toward John Schneider.  John Schneider is Plaintiff's former friend and that friendship likely terminated when Defendants refused to finance Plaintiff's ranch operations.

45. Plaintiff's lawsuit is defamation of the Schneiders.

46. Plaintiff's lawsuit is defamation of Michelle Schneider.

47. Defendants assert as a defense qualified privilege or conditional privilege.  Citizens of Cody, Wyoming and surrounding communities have a public need to know truthful information contained within the flier.

48. Defendant reserves the right to assert additional affirmative defenses as the same become know through discovery or trial.

WHEREFORE, Schneiders and Defendant Schneider PC (to the degree a no longer existing corporation can make any request) ask that this court dismiss Plaintiff's complaint in the entirety, with Plaintiff taking nothing, and awarding fees and costs to Defendants.

## COUNTERCLAIMS

COMES NOW John and Michelle Schneider (herein jointly referred to as "Schneiders") and, unless where indicated a cause of action relates solely to one or

the other, upon information and belief state the following allegations for their counterclaims against Jimmie G. Biles, Jr., (hereinafter "Biles").

## FACTS COMMON TO ALL CAUSES OF ACTION

1. Schneiders are residents of Park County, Wyoming.

2. Biles is a resident of Park County, Wyoming.

3. The amount in controversy is substantially in excess of Seventy Five Thousand Dollars ($75,000.00), exclusive of interests and costs.

4. Schneiders have filed a Motion to Dismiss the lawsuit on jurisdictional grounds and submit that, as no diversity jurisdiction or federal questions exists, jurisdiction and venue are appropriate in the State of Wyoming, Fifth Judicial District, Park County, Wyoming.

5. Biles is an orthopedic physician and surgeon in Park County, Wyoming with his primary place of practice in Cody, Wyoming.

6. Biles previously encouraged John Schneider to relocate to the Cody area and to practice neurosurgery in the Cody area.

7. Biles previously referred work to John Schneider.

8. In fact, Biles referred his wife to John Schneider after she had a consult by another neurosurgeon.

9. Biles previously committed to sell John Schneider the Big Horn Basin Orthopedic building and real estate located in or near Powell, Wyoming.

10. Biles previously supported Dr. Schneider at medical staff meetings.

11. Biles initially participated with Dr. Schneider in surgical procedures in the capacity as a "co-surgeon" for which Biles received some of the surgical fee.

12. Biles was subsequently denied opportunity to perform as a "co-surgeon" with Schneider because Biles was not certified or specialty trained in spine surgery: other local doctors were so trained.

13. As a result of this ineligibility, Biles instead provided Dr. Schneider with Biles' own Physician's Assistants (PA-C) to assist with Dr. Schneider's surgical procedures. Biles and/or his business entity received the assist fee.

14. Biles used to employ a PA-C that quit working for Biles. Later, the PA-C went to work for Schneider.

15. That angered Biles.

16. At that time, Biles no longer had an opportunity to share in surgical fees with Schneider in any manner.

17. Biles previously invited John Schneider to join him in the ranching business.

18. Upon information and belief, Biles is financially distressed in the ranching business and has, in the past, not paid ranch hands and others providing services for the ranch operations at the request of Biles or his agents.

19. Schneider declined to invest or otherwise participate with Biles in the ranching business.

20. This angered Biles.

21. Thereafter, Biles declined to refer patients to Schneider.

22. Then, John Schneider as chief of surgery for West Park Hospital received complaints of Biles taking care of patients while under the influence of alcohol.

23. John Schneider addressed this matter with Biles in direct conversation. Biles denied taking care of patients while under the influence of alcohol.

24. This further angered Biles and his animosity toward John Schneider was apparent.

25. Biles then referred patients to Dr. Robert Narotzky or other neurosurgeons.

26. During the past two years, and until Dr. Nartozky retired (or otherwise quit practicing medicine), Dr. Biles referred patients to Narotzky.

27. Schneider and other Cody doctors created The Surgical Center at OMNI located in Billings, Montana.

28. Schneider previously attempted to mend the fence with Biles regarding Biles' past animosity toward him and suggested that Biles could participate in the

OMNI project (then in the conceptual phase), and Biles expressed interest initially, but other physicians already involved in the project were concerned.

29. Biles represented that he would return to appropriately supporting John Schneider's practice and the practice of other local physicians, but shortly thereafter indicated he would not cooperate.

30. Ultimately, Biles was not invited to participate in The Surgical Center at OMNI.

31. This further angered Biles.

32. Counsel for Biles, the same counsel who have filed the lawsuit against Schneiders, took the deposition of Lisa Shaurette Fallon in Indianapolis, Indiana.

33. Fallon denied that John Schneider created the flier.

34. Fallon denied that Michelle Schneider created the flier.

35. Fallon denied that John Schneider helped her create the flier.

36. Fallon denied that Michelle Schneider helped her create the flier.

37. Fallon claimed that she acted alone when she created the flier.

38. Fallon denied that the information contained within the flier was provided to her by John Schneider.

39. Fallon denied that the information contained within the flier was provided to her by Michelle Schneider.

40. Fallon admitted that she published the flier.

41. Fallon admitted that she disseminated the flier.

42. Fallon denied being the agent of John Schneider.

43. Fallon denied being the agent of Michelle Schneider.

44. In general, Fallon denied that either John or Michelle Schneider created or disseminated the flier.

45. Biles is not aware of any credible testimony that John Schneider created the flier.

46. Biles is not aware of any credible testimony that Michelle Schneider created the flier.

47. Biles was aware of the testimony of Fallon prior to serving a lawsuit regarding the flier upon Schneiders.

48. With full knowledge of the testimony of Fallon, Biles chose to file suit against Schneiders for defamation and other claims related to the flier.

49. Biles is jealous of Schneider.

## I.   COUNT ONE:  DEFAMATION

50. Schneiders reallege all previous allegations.

51. John Schneider is not a public figure.

52. Michelle Schneider is not a public figure.

53. Biles' complaint accuses Schneider of, among other things, conspiring to create and/or publish the flier.

54. Biles knew that his complaint was false and, despite such knowledge, recklessly published the complaint by filing the same in a public docket.

55. Biles knew the complaint would be obtained by the local newspapers.

56. Biles knew allegations in the complaint would be recited or recast in the local papers.

57. Biles' counsel, acting as an agent of Biles, was contacted by the Cody Enterprise and did not ask or otherwise instruct the paper not to repeat or recast allegations within the complaint.

58. The allegations within the complaint are harmful, false, and defamatory.

59. Biles, through his agents and verified by him, made false and defamatory statements of fact regarding John Schneider and/or Michelle Schneider.

60. Biles' false and defamatory statements tend to hold Schneiders (or either of them) up to hatred, contempt, ridicule and scorn; and causes Schneiders to be shunned and avoided.

61. The allegations have caused potential patients not to choose John Schneider as their surgeon.

62. Biles' statements have caused harm and economic harm to Schneiders in that individuals did believe such statements, especially as the same were filed in court.

63. Biles knew the allegations made within the lawsuit were false based on the testimony of Fallon and the lack of any other credible testimony after investigation by Biles or his agents.

64. Biles acted with reckless disregard in publishing the allegations against Schneiders.

65. Additionally, Biles has made statements regarding the surgical skill of John Schneider that are defamatory. Plaintiff has stated that he would not take a dying dog to Plaintiff.

66. Plaintiff caused to be created and then mailed a letter to surgeons in the Billings, Montana area criticizing John Schneider.

## II. COUNT TWO: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

67. Defendants reallege the prior allegations.

68. The intentional and reckless acts and failure to act by Biles amounts to extreme and outrageous conduct, which resulted in severe emotional distress to Schneiders.

69. Biles' conduct is so outrageous and extreme as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community.

70. As a direct and proximate result of Biles' conduct, Schneiders have suffered damages for emotional distress for which Biles is responsible.

### III. COUNT THREE: INTENTIONAL INTERFERENCE WITH A PROSPECTIVE CONTRACTUAL RELATION

71. Defendants reallege the prior allegations.

72. John Schneider operated a medical practice in Park County, Wyoming.

73. Biles has purposefully and with malicious intent referred potential patients away from Schneider.

74. Biles has referred clients from Schneider to other neurosurgeons.

75. Biles has encouraged patients to sue Schneider.

76. As a direct result of Biles' intentional interference with and disruption of Schneider's business, Schneiders have suffered damages.

### IV. COUNT FOUR: INTENTIONAL INTERFERENCE WITH A CONTRACT

77. Defendants reallege the prior allegations.

78. A valid and contractual relationship exists between Defendant Dr. Schneider and his patients.

79. Biles has knowledge of the afore-said contractual relationship.

80. Biles has intentionally and improperly interfered with the doctor-patient relationship, resulting in a breach of the doctor-patient contract.

81. As a direct result of Biles' intentional interference with and disruption of Schneider's business, Schneiders have suffered damages.

## DAMAGES

82. As a direct and proximate result of the negligent, reckless, willful, wanton and intentional conduct of the Plaintiff as described herein, Schneiders have incurred the following damages:

   a. General damages, including injury to reputation, loss of credibility among peers, patients, and the public, and all other general damages;

   b. Verifiable lost business, past and future;

   c. Loss of profits, past and future;

   d. Loss of earning capacity;

   e. Loss of enjoyment of life, past and future;

   f. Emotional pain and suffering, including anxiety, depression and other mental suffering, past and future;

   g. Exemplary and punitive damages as a result of the malicious, intentional, willful, wanton and reckless conduct of Plaintiff as described herein.

   h. Attorney fees;

    i. Costs of this action, and such other relief as the Court deems equitable and proper;

    j. All other damages available under law and equity.

WHEREFORE, Schneiders request the following relief:

1. Judgment against Biles for general damages in an amount consistent with the allegations contained herein and to be proven at trial.

2. Judgment against Biles for special damages in an amount consistent with the allegations contained herein and to be proven at trial.

3. Judgment against Biles for exemplary and punitive damages in an amount consistent with the allegations contained herein and to be proven at trial.

4. Judgment against Biles for attorneys' fees, costs, interest, and such other and further relief as the Court deems just and reasonable.

RESPECTFULLY SUBMITTED this 21st day of February 2012.

/s/ Laurence W. Stinson
Laurence W. Stinson, WSB #6-2918
Bonner Stinson, P.C.
1421 Rumsey Avenue
Cody, Wyoming 82414
307.587.0300
Fax: 307.527.6092

ATTORNEY FOR DEFENDANTS SCHNEIDER

## CERTIFICATE OF SERVICE

I, Laurence W. Stinson, attorney Defendants Schneider, hereby certify that on the 21st day of February 2012, I served a true and correct copy of the foregoing via the CM/ECF system to:

R. Daniel Fleck, WSB #6-2668
M. Kristeen Hand, WSB #6-3544
THE SPENCE LAW FIRM, LLC
15 South Jackson
P.O. Box 548
Jackson, Wyoming 83001
fleck@spencelawyers.com
hand@spencelawyers.com

/s/ Laurence W. Stinson
Laurence W. Stinson