FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

MAR 05 2012

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JIMMIE G. BILES, JR., MD, a resident of Wyoming,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN HENRY SCHNEIDER, JR., MD, MICHELLE RENE SCHNEIDER, husband and wife, both residents of Montana; JOHN HENRY SCHNEIDER, JR., MD, PC a Montana Corporation; and JOHN DOES I-XXX,<br><br>Defendants. | Case No. 11-CV-366-F |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendants' motion seeks dismissal of Plaintiff's civil Racketeer Influence and Corrupt Organizations (RICO) claim under 18 U.S.C. § 1962 (c) and (d), for failure to state a claim for relief. Defendants seek dismissal of Plaintiff's remaining state law claims for lack of subject matter jurisdiction after Plaintiff's civil RICO claim is dismissed. At oral argument, for the first time, Defendants also argued there was no scheme or pattern as required for a civil RICO claim. The Court has reviewed Defendants' motion and is fully

Case 2:11-cv-00366-NDF Document 25 Filed 03/05/12 Page 2 of 10

informed. Defendants have failed to demonstrate any legal basis to dismiss Plaintiff's civil RICO claim. Accordingly, Defendants' Motion to Dismiss is DENIED.

## BACKGROUND

Plaintiff's Complaint alleges five causes of action against Defendants: (1) Defamation; (2) Joint Enterprise; (3) Intentional Infliction of Emotional Distress; (4) Intentional Infliction with Economic Relations; and (5) Conspiracy in Violation of 18 U.S.C. § 1962(c) and (d). Defendants only seek dismissal of Plaintiff's fifth cause of action—Plaintiff's civil RICO claim.

All of Plaintiff's claims arise from a common set of facts. Plaintiff alleges the Defendants conspired with their friend, Lisa Fallon, to publish a defamatory flyer about the Plaintiff. (Compl. ¶ 21). Defendants purchased a spreadsheet with over 14,000 Wyoming addresses and gave the spreadsheet to Ms. Fallon so she could publish the defamatory flyer. *Id.* at ¶¶ 35-38. Defendants allegedly wired Ms. Fallon money, which Ms. Fallon used to pay for the cost to publish the defamatory flyer. *Id.* at ¶ 37. At Defendants direction and request, Ms. Fallon delivered the flyer to a commercial printing service to print and mail the flyer using the United States Postal Service to 14,239 Wyoming residents. *Id.* at ¶ 40. Plaintiff further alleges that as part of the conspiracy, Defendants intended to have Ms. Fallon accept full and sole responsibility for this lawsuit. *Id.* at ¶¶ 25-26.

After the commercial printing service mailed the flyer to 14,239 Wyoming households, Plaintiff received phone calls from numerous people regarding the defamatory

2

material. *Id.* at ¶ 49. Plaintiff's Complaint also alleges that Defendants are paying for Ms. Fallon's attorney in 11-CV-294-F- *Biles v. Fallon*, Defendants offered Ms. Fallon payment for her involvement in this matter, and Defendants agreed to indemnify Ms. Fallon for any liability she may suffer for participating in the conspiracy against Jimmie Biles. *Id.* at ¶¶ 56-58.

On February 2, 2012, Defendants filed a motion to dismiss Plaintiff's civil RICO claim. (Def.'s Mot. to Dismiss, ECF No. 8). Defendants argue Plaintiff's Complaint fails to meet the elements of mail fraud and wire fraud because Plaintiff has not established any identifiable injury to his business or property and therefore, the elements of the predicate acts are not met. The Court heard oral arguments on March 1, 2012. At that hearing, for the first time, Defendants cited new cases and argued that there was no scheme or pattern as required for a civil RICO claim.

## STANDARD OF REVIEW

A court may grant a motion to dismiss under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal, a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in a light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). To avoid dismissal, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Leverington v. City of Colo. Springs*, 643

3

F.3d 719, 723 (10th Cir. 2011); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009).

## DISCUSSION

Plaintiff's fifth cause of action alleges Defendants violated RICO and conspired to commit mail fraud and wire fraud. An individual may bring a private civil claim for violation of the federal RICO Act. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court"). Plaintiff alleges Defendants' conduct and conspiracy violate RICO, 18 U.S.C. § 1962(c) and (d). Subsection (c) states:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly in the conduct of such enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

*Id.* at § 1962(c). Section (d) provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *Id.* at § 1962(d). Racketeering activities consist of certain predicate acts defined in 18 U.S.C. § 1961(1). The two predicate acts alleged in the Complaint are mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343).

Defendants argue Plaintiff's Complaint fails to sufficiently allege the predicate acts of mail fraud and wire fraud. "The elements of federal mail fraud as defined in 18 U.S.C. § 1341 are (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme." *United States v. Schuler*, 458 F.3d 1148, 1152 (10th Cir. 2006) (quoting *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003)). "The first and second elements of federal mail and wire fraud are identical. The third element of wire fraud as defined in 18 U.S.C. § 1343 is the use of interstate wire or radio communications [instead of the mails] to execute the scheme." *United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011). Thus, wire fraud has exactly the same elements except for the third element. The Court will address each of the elements in turn.

**A. Plaintiff's Complaint alleges a scheme or artifice to defraud or obtain property [or money] by means of false or fraudulent pretenses, representations, or promises.**

"As to the first element, the scheme or artifice to defraud, . . . the scheme must be described with particularity" and "it is not sufficient in this regard to merely plead the statutory language." *Schuler*, 458 F.3d 1152. A scheme to defraud defies precise precision and is measured by a departure from community standards of fair play and candid dealings. *United States v. Schwab*, 88 F. Supp. 2d 1275, 1283 (D. Wyo. 2000). The phrase "to defraud" refers to "wrongdoing one in his property rights by dishonest methods or schemes, or depriving a person "of something of value by trick, deceit, chicane or overreaching."'" *Id*.

5

Defendants argue that the Complaint does not allege any viable scheme to defraud on the part of the Defendants for three reasons, only two of which merit discussion by the Court.[1] First, Defendants argue the Complaint does not allege that Plaintiff's property rights were wronged. Additionally, Defendants allege they have nothing to gain economically from injuring the Plaintiff. Both of Defendants' arguments lack merit.

Defendants argue Plaintiff's future economic interest and potential decrease in market share are not property rights sufficient to sustain a civil RICO claim. Plaintiff's entire claim is that Defendants intended to defraud Dr. Biles of his medical practice and economically ruin Plaintiff's reputation and medical practice. Plaintiff alleges that Defendants intentionally set out to destroy his reputation so as to gain business for their own entities. (Compl. ¶ 112). Furthermore, Plaintiff is not alleging a loss of market share or potential loss of future economic damages. Instead, Plaintiff alleges Dr. Biles "suffered a loss and continues to suffer a loss having economic and pecuniary value as a direct and proximate result of the false publication by Defendants." *Id.* at ¶ 70.

Additionally, the Complaint alleges an elaborate scheme for the Defendants to have their friend in Indiana secretly conspire with them to economically ruin Plaintiff's reputation

---

[1] Defendants argue Ms. Fallon has denied any conspiracy with the Defendants. Since she has accepted full and sole responsibility, Defendants argue that there is no scheme to defraud. However, this ignores the Court's standard of review and is a factual issue that is not appropriate for discussion in resolving this motion to dismiss. *See Moya v. Schollenbarger*, 465 F.3d 444, 458 n.16 (10th Cir. 2006) ("It is well-established . . . that in determining whether to grant a motion to dismiss, the district court [is] . . . limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint").

6

and his medical practice, and his ability to earn a living as a medical doctor. For example, the Complaint states: "To disturb or cause the interference of Plaintiff's medical practice, Defendants intentionally set out to destroy Plaintiff's reputation among Plaintiff's potential patient base. The Defendants also sought, thereby, to gain business for their entities." *Id.*; *see also* ¶ 113 ("By disturbing or causing interference with Plaintiff's medical practice, Defendants stood to gain an economic advantage through an increased referral business"). Furthermore, Plaintiff's Complaint alleges that Defendants intended to destroy Plaintiff's reputation within his community and intended to deter Wyoming people from seeking medical care from the Plaintiff. *Id.* at ¶ 115. Finally, Plaintiff's Complaint alleges "that Defendants' conspiracy and scheme to deceive Wyoming residents was done with the intention of defrauding the Plaintiff of income such that Plaintiff's economic viability would be jeopardized if not destroyed." *Id.* at ¶117.

Furthermore, in relation to mail fraud and wire fraud, Plaintiffs are not even required to allege actual injury. "An intent to inflict economic harm on or injure the property rights of another is not an element of federal mail or wire fraud. The gist of the offenses is a scheme to defraud and the use of interstate communications to further that scheme." *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003).

> The notion of harm in a mail or wire fraud prosecution is important only in the sense that proof of contemplated or actual harm to the victim or others is one means of establishing the necessary intent to defraud. *See e.g., United States v. Cochran*, 109 F.3d 660, 665 (10th Cir. 1997) (acknowledging "that where actual harm exists as a natural and probable result of a scheme, fraudulent

intent may be inferred"); *United States v. Bowen*, 946 F.2d 734, 737 (10th Cir. 1991) (noting that proof of loss may bear on the question of intent to defraud).

*Welch*, 327 F.3d at 1104-07 (10th Cir. 2003). Here, although not necessary for a claim of mail fraud or wire fraud, Plaintiff's Complaint sufficiently pleads injuries to Plaintiff's business and economic gain to the Defendants. Accordingly, Plaintiff's Complaint alleges a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises.

### B. Plaintiff's Complaint Sufficiently Alleges Intent to Defraud

Defendants cannot argue in good faith that Plaintiff's Complaint does not sufficiently allege an intent to defraud. Defendants' only argument in opposition to this element is that Ms. Fallon has admitted that she acted alone in creating and mailing the defamatory flyer. However, as discussed above, this is not a proper argument for a motion to dismiss.

A cursory review of Plaintiff's Complaint reveals that Plaintiff has plead an intent to defraud.

> A variety of circumstantial evidence has been held relevant to infer fraudulent intent. Intent may be inferred from evidence that the defendant attempted to conceal activity. Intent to defraud may be inferred from the defendant's misrepresentations, knowledge of a false statement as well as whether the defendant profited or converted money to his own use.

*Welch*, 327 F.3d at 1105. Here, Plaintiff alleges Defendants intended to hide their true identities and have Ms. Fallon accept full and sole responsibility for the flyer. Plaintiff alleges that Ms. Fallon's cover-up is further evidence of the intent to defraud. Thus, this

8

evidence, along with numerous other allegations in Plaintiff's Complaint, sufficiently allege intent to defraud.

### C. Plaintiff's Complaint sufficiently alleges that Defendants used the United States Postal Service and interstate wire communications to execute the scheme.

The Complaint alleges that Defendants used wire, cell phones, telephones, email and other wire technology to further their conspiracy. (Compl. ¶ 121). Additionally, many communications occurred between Indiana, where Ms. Fallon lived and worked, and Montana and Wyoming, where Defendants lived and worked. Moreover, the Complaint alleges Defendants used the United States Postal Service to mail the flyer from Indiana to 14,239 households in Wyoming. *Id.* at 119. Thus, Plaintiff's Complaint sufficiently pleads the third element of mail fraud and wire fraud.

### D. Plaintiff's Complaint sufficiently presents a pattern of racketeering activities.

Defendants raised new issues at the oral argument and suggested Plaintiff's complaint does not allege pattern as required for RICO purposes. "Issues may not be raised for the first time at oral argument." *United States v. Abdenbi*, 361 F.3d 1282, 1289 (10th Cir. 2004); *Durham v. Zerox Corp.*, 18 F.3d 836, 841 n.4 (10th Cir. 1994). The Court is not required to address issues when raised for the first time at oral argument. *Id.* Since Plaintiff chose to raise this issue for the first time at oral argument, the Court will not address this issue.

Additionally, even assuming Defendants raised this issue before oral argument, Defendants' argument lacks merit. "[A]t least two predicate acts are required in order to establish a 'pattern' for RICO purposes." *Lancaster Community Hosp. v. Antelope Valley*

*Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991); *United States v. Smith*, No. 10-3231, 2012 U.S. App. LEXIS 1889, at *19 (10th Cir. Feb. 2, 2012). Here, the Complaint sufficiently alleges two predicate acts and many other acts with the similar purpose of causing economic harm to Plaintiff. *See U.S. v. Knight*, 659 F.3d 1285, 1287 (10th Cir. 2011) (discussing the requirements necessary to establish a pattern of racketeering activity). Thus, this is sufficient to establish a pattern for RICO purposes.

## CONCLUSION

Plaintiff's Complaint details the alleged mail fraud and wire fraud engaged in by Defendants. The Complaint sufficiently alleges that Defendants engaged in a scheme to economically harm Plaintiff and have caused economic harm to Plaintiff. Accordingly, for all the reasons discussed above, Defendants' motion to dismiss is DENIED.

Dated this 5 day of March, 2012.

NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE