Jeffery J. Oven - Wyo. Bar #6-3371
Christopher C. Voigt - Wyo. Bar #6-3313
CROWLEY FLECK PLLP
500 Transwestern Plaza II
490 North 31st Street
P. O. Box 2529
Billings, MT  59103-2529
Telephone:  (406) 252-3441
Facsimile:  (406) 259-4159

Attorneys for Counter Defendant.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JIMMIE G. BILES, JR., MD,<br>a resident of Wyoming,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>JOHN HENRY SCHNEIDER, JR., MD,<br>MICHELLE RENE SCHNEIDER,<br>husband and wife, both residents of Montana;<br>JOHN HENRY SCHNEIDER, JR., MD, PC, a<br>Montana corporation; and JOHN DOES I-XXX,<br><br>　　　　　　Defendants.<br>------------------------------------------------------------<br>JOHN HENRY SCHNEIDER, JR., MD,<br>MICHELLE RENE SCHNEIDER,<br>husband and wife, both residents of Montana;<br>JOHN HENRY SCHNEIDER, JR., MD, PC, a<br>Montana corporation,<br><br>　　　　　　Counter Claimants,<br><br>vs.<br><br>JIMMIE G. BILES, JR., MD,<br>a resident of Wyoming,<br><br>　　　　　　Counter Defendant. | Cause No.  11-CV-366-NDF<br><br><br><br>**COUNTER DEFENDANT'S<br>BRIEF IN SUPPORT OF<br>MOTION TO DISMISS<br>COUNTERCLAIM** |

COMES NOW the Counter Defendant, Jimmie G. Biles, Jr., by and through his counsel, and hereby submits his brief in support of his motion to dismiss.

## INTRODUCTION

The Court is acutely aware of the Defendants' conduct in attempting to avoid liability for, and discovery of, the scheme to have Lisa Fallon mail from Indiana defamatory flyers about Dr. Biles to Wyoming residents. The Defendants' latest tactic is a counterclaim against Dr. Biles. The instant motion is quite simple. Defendants' counterclaim is founded upon the allegations Dr. Biles made in his complaint against the Schneiders. Under relevant law, the allegations in the complaint were and are absolutely privileged. Defendants had no good faith basis upon which to file the counterclaims. The claims fail to state a proper claim for which relief can be granted and should be dismissed.

## DISCUSSION

Dr. Biles has filed suit against the Schneiders for, among other things, defamation. (Doc. 1). The complaint alleges that the Schneiders conspired with Indiana resident Lisa Fallon with the intention of using Fallon to publish a flyer that the Schneiders knew contained false statements regarding Dr. Biles. The Schneiders provided the information, money for printing fliers, and Wyoming mailing addresses to Fallon. (Doc. 1, ¶¶ 23-37). The Schneiders have paid Fallon money, and have promised her more money, if she "takes a bullet" for the flier without exposing the Schneiders and their involvement. Since the filing of the complaint, very troubling evidence has been uncovered regarding subornation of perjury and the Schneiders further involvement in the conspiracy with Fallon. (Doc. 18-1; 18-3; 18-4). The Schneiders, through a surrogate corporation, North Rockies Neuro-Spine, LLC, have paid for their co-conspirator Lisa Fallon's attorney, Mr. Craig Silva of Williams, Porter, Day & Neville. This Court has on more

than occasion acknowledged this evidence and found good cause to prevent the Schneiders from further colluding with Fallon. (Doc. 30; *Biles v. Fallon*, Cause No. 11-00294-NDF, Doc. 37).

Despite this evidence, the Schneiders have filed a counterclaim against Dr. Biles, claiming the allegations in the complaint constitute defamation. This litigation maneuver fails as a matter of law, as allegations made in a court proceeding are absolutely protected and cannot be grounds for defamation.

Under Rule 12(b)(6), Fed. R. Civ. P., a motion to dismiss may be granted for failure to state a claim upon which relief can be granted. Dismissal is appropriate when it appears that the plaintiff can prove no set of facts entitling him to relief, accepting all well-pleaded allegations in favor of the non-moving party. Dismissal may be either for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Under *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (emphasis added) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that" amounts to "more than a sheer possibility that a defendant has acted unlawfully" but which allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. The court must focus on the need "for allegations plausibly suggesting (not merely consistent with)" each and every

necessary element of the plaintiff's causes of action against the defendants. See *Twombly*, 550 U.S. at 557.

**I.    The factual basis for the claims.**

Dr. Biles has filed separate defamation lawsuits against both Fallon and Schneiders. Fallon was deposed in her lawsuit and that deposition transcript has been sealed. Recently, this Court ruled that the deposition must remain sealed, and ordered that until the Schneiders are deposed, they cannot "review or otherwise learn of Ms. Fallon's deposition testimony." (Doc. 20). Yet, allegations forming the basis of the counterclaims are allegations of specific testimony by Fallon in the sealed deposition. In the counterclaim, the Schneiders allege that Fallon denied all involvement by the Schneiders in the conspiracy to defame Dr. Biles. (Doc. 13, Counterclaim, ¶¶ 32-44). The basis of the counterclaim, therefore, is that with full knowledge of Fallon's testimony denying Schneiders' involvement, Dr. Biles proceeded anyway to file suit against the Schneiders. (Id., ¶ 48). Even if Schneiders' recitation of Fallon's sealed depositions testimony is accurate, that does not mean that it is true. (See Doc. 18-1; 18-3; 18-4). In fact, in light of the additional evidence procured since the deposition, namely the three "laundry" documents, it is highly likely that Fallon's deposition testimony is untrue.

**II.   The defamation claim fails.**

    **A.    The claims made in the lawsuit are privileged.**

With minor exception, the bases for Schneiders' defamation claims are the allegations in the complaint in this matter. (Id., ¶¶ 54-64). However, the allegations are absolutely privileged and immune from liability. It is well established law that all witnesses are absolutely immune from liability based on their statements made in judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 330-31, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). As recently as 2009, the Wyoming

Supreme Court addressed a claim of libel which stemmed from a victim impact statement created for purposes of a prosecution. In analyzing the claim and whether the district court was correct in granting summary judgment to the victims, the Supreme Court held:

> Libel is a defamatory statement communicated in writing.
>
>> A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held. To be actionable, the defamatory or disparaging words must affect the plaintiff in some way that is peculiarly harmful to one engaged in his trade or profession.
>
> *Lever v. Community First Bancshares, Inc.*, 989 P.2d 634, 637–38 (Wyo.1999) (citations and quotation marks omitted). The question of whether a statement is protected by privilege or immunity and therefore cannot be grounds for a civil defamation suit is one of law, which we review de novo. *Id.* at 638.
>
>> The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law. Some American decisions required a showing that the witness' allegedly defamatory statements were relevant to the judicial proceeding, but once this threshold showing had been made, the witness had an absolute privilege. The plaintiff could not recover even if the witness knew the statements were false and made them with malice.
>
>> In the words of one 19th-century court, in damages suits against witnesses, "the claims of the individual must yield to the dictates of public policy, which requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible." A witness' apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability.
>
> *Briscoe v. LaHue*, 460 U.S. 325, 331–33, 103 S.Ct. 1108, 1113–14, 75 L.Ed.2d 96 (1983) (citations omitted). "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." Restatement (Second) of Torts § 588 (1977).

*Abromats v. Wood*, 2009 WY 100, ¶ 9, 213 P.3d 966. Citing to the foregoing law and to *Elmore, infra*, the Wyoming Supreme Court held that "[w]here, as here, the document containing the victims' statements was prepared for the purpose of submission to the court, and it was not published to anyone for any reason outside that purpose, we hold that the statements contained therein are absolutely privileged as statements by a witness in the context of a judicial proceeding." *Id.*, ¶ 13.

The Wyoming Supreme Court's ruling regarding the victim statements in *Abromats* is not surprising, considering its 1992 decision in *Elmore v. Van Horn,* 844 P.2d 1078, 1079 (Wyo. 1992). There, a father who was accused of sexual abuse during a custody proceeding filed suit against a counselor who signed an affidavit which indicated that there was evidence of sexual abuse. The custody-case court found that the counsel had either lied to the court in her affidavit or in a subsequent proceeding regarding the alleged sexual abuse, and set aside its prior order of supervised visitation. The counselor admitted that she had not read the affidavit she signed as "closely as she should have." *Elmore*, 844 P.2d at 1081.

After winning custody, the father in *Elmore* filed an action against the counselor for her handling of the allegations of sexual abuse. The district court granted summary judgment to the counselor on the basis of (1) immunity for reports of suspected child abuse and (2) witness immunity. As to the witness immunity argument, the Wyoming Supreme Court stated:

> Since we have not considered the scope of common law witness immunity, we look to United States Supreme Court precedent. Traditionally, witnesses and those who participate in judicial proceedings enjoy absolute immunity for civil claims which could result from their statements made in open court. *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). "The immunity of parties and witnesses from subsequent damages liability for their testimony in judicial proceedings was well established in English common law." *Briscoe*, 460 U.S. at 330–31, 103 S.Ct. at 1113 (citations omitted)...

> ...Van Horn testified in court as to her suspicions of child sexual abuse. Under *Briscoe*, Van Horn is entitled to absolute immunity for her testimony in court. *Briscoe*, 460 U.S. at 330–33, 103 S.Ct. at 1113–14. The district court was correct in dismissing those causes of action that rely upon Van Horn's testimony in court.

*Id.*, 844 P.2d at 1084-85. As to the affidavit, which was prepared in anticipation of the judicial proceeding, the Wyoming Supreme Court commented that "[t]here are other remedies for false affidavits apart from civil liability. And imposing civil liability poses the very real risk that witnesses may not participate in pretrial preparations and thus the crucial things that occur before trial—preparation, settlements, dismissals—might be thwarted altogether." *Id.* Thus, the Court held that the "district court was correct in finding that Van Horn had immunity from civil damages for signing the affidavit and testifying." *Id.* at 1086.

**B.     Any remaining allegations are insufficient as a matter of law.**

Once the litigation allegations are ignored, Schneiders are left with the allegations that: (1) Dr. Biles "has made statements regarding the surgical skill of John Schneider that are defamatory. Plaintiff has stated that he would not take a dying dog to Plaintiff [sic];" and (2) "Plaintiff caused to be created and then mailed a letter to surgeons in the Billings, Montana area criticizing John Schneider." (Doc. 13, Counterclaims, ¶¶ 65-66). Notably, the counterclaim fails to set forth to whom and when the "dying dog" comment was made. The counterclaim fails to set forth a single fact regarding the letter, such as when it was sent, to whom it was sent, or, importantly, what the letter actually stated. The counterclaims do not even allege that these supposed actions took place within the proper statute of limitations. Instead, the counterclaim makes one conclusory allegation that the letter "criticized" Schneider. The bare factual portions of these allegations, even taken as true, do not state a claim for defamation.

A defamatory communication "is one which tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to

injury his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held." *Wilder v. Cody Country Chamber of Commerce*, 868 P.2d 211, 223 (Wyo. 1994). Importantly, to be actionable, the defamation "must affect the plaintiff in some way that is peculiarly harmful to one engaged in his trade or profession." *Id.*

Dr. Schneider is a surgeon. Reasonable minds cannot conclude that a statement that "I would not take a dying dog" to Dr. Schneider, or vaguely "criticizing" Dr. Schneider, is defamatory or is "peculiarly harmful" to Dr. Schneider in his business, nor can one conclude that these actions fall within the statute of limitations. In fact, it is hard to understand how any statement could be defamatory to Dr. Schneider in his business, as his own conduct has caused him to lose his medical license in Wyoming. Those allegations fail to state a claim for defamation and Count One should be dismissed.

### III.   The intentional infliction of emotional distress claim fails.

The Wyoming Supreme Court has adopted the tort of intentional infliction of emotional distress as stated in Restatement (Second) Torts § 46(1), which is: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Worley v. Wyoming Bottling Co.*, 1 P.3d 615, 628 (Wyo. 2000).

#### A.   The claims are barred by the litigation privilege.

The litigation privilege equally applies to the IIED claim as the defamation claim. In addition to the privilege independently applying to the IIED claim, the Wyoming Supreme Court has held that for these types of circumstances, the IIED claim is derivative of, and subject to, the defenses applicable to the conduct giving rise to the alleged emotional distress. *See Worley*, 1 P.3d at 628 (holding that an IIED claim fails in the employment context if the employer had the

right by contract to terminate the employee, even if the employer is aware that the termination will cause emotional distress).

### B. The remaining claims are insufficient as a matter of law.

Any factual allegations outside the litigation privilege do not rise to the level of an actionable tort. The initial threshold for an IIED claim to proceed is higher than that for punitive damages. A defendant's conduct must be "extreme and outrageous."

> It has not been enough that the defendant has acted with an intent which is tortuous or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
>
> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime, plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Id.* at 628. The Court has an initial gatekeeper function to determine whether the conduct alleged is so outrageous and extreme to permit recovery. Only then can the jury determine if emotional distress was actually inflicted. *See id.*

The remaining allegations certainly do not rise to an actionable level. Schneiders allege that Dr. Biles has stated (to an unknown person at an unknown time) that Dr. Biles would not take a dying dog to Dr. Schneider, and that Dr. Biles mailed a letter to surgeons in Billings, Montana "criticizing" Dr. Schneider. (Doc. 13, Counterclaims, ¶¶ 65-66). Again, the

counterclaim wholly fails to allege any specific facts to support the conclusory allegations. Under this Court's gatekeeper function, reasonable minds can only conclude that these allegations do not rise to the level to support an IIED claim.

### IV. The intentional interference claims fail.

The Wyoming Supreme Court has adopted the Restatement (Second) Torts §§ 766 and 766 B for the torts of intentional interference with contract and intentional interference with prospective contractual relations. The elements of intentional interference with contract are: (1) the existence of the contract; (2) the defendant's knowledge; (3) the intentional and improper interference inducing or causing a breach; and (4) resulting damages. *First Wyoming Bank, Casper v. Mudge*, 748 P.2d 713, 715 (Wyo. 1988). The elements for intentional interference with a prospective contract similarly require intentional and improper interference. *Martin v. Wing*, 667 P.2d 1159, 1162 (Wyo. 1983).

#### A. The claims are barred by the litigation privilege.

To the extent these claims rely upon the allegations in the complaint, those allegations made in Dr. Biles' complaint are privileged as a matter of law. Privileged communications cannot be a basis to state a claim for these torts. *See Lever v. Community First Bancshares, Inc.*, 989 P.2d 634, 641 (Wyo. 1999).

#### B. The claims are also insufficient as a matter of law.

The allegations pled to support Counts Three and IV are nothing more than vague conclusory allegations. For interference with prospective contractual relations, Schneiders allege:

> 73. Biles has purposefully and with malicious intent referred potential patients away from Schneider.
>
> 74. Biles has referred clients from Schneider to other neurosurgeons.

75. Biles has encouraged patients to sue Schneider.

For interference with a contract, Schneiders allege:

80. Biles has intentionally and improperly interfered with the doctor-patient relationship, resulting in a breach of the doctor-patient contract.

These allegations fail to state a claim for numerous reasons. First, Schneider cannot practice medicine in the state of Wyoming. Therefore, Schneider cannot have any valid doctor-patient contracts. Even if he could have valid relationships, these conclusory allegations certainly do not plead sufficient facts that rise to an actionable level. Second, as to allegations 73 and 74, Schneider does not allege that Dr. Biles had a duty to refer clients to Schneider. Finally, the conclusory allegations that Dr. Biles has interfered with Schneider's patient relationships is just that – conclusory. There is not one specific allegation of fact to support the conclusion. Under *Iqbal* and *Twombly*, that is not enough to survive a motion to dismiss. This claim should be dismissed.

## CONCLUSION

For the above reasons, Counter Defendant Dr. Jimmie Biles respectfully requests that this Court enter an order dismissing defendants' counterclaims with prejudice.

Dated this 12th day of March, 2012.

                CROWLEY FLECK PLLP

                By /s/ Christopher C. Voigt
                    Jeffery J. Oven (Bar #6-3371)
                    Christopher C. Voigt (Bar #6-3313)
                    P. O. Box 2529
                    Billings, MT 59103-2529
                    Attorneys for Counter Defendant