FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2012 APR 11  AM 10 51

IN THE UNITED STATES DISTRICT COURT, CLERK
CHEYENNE

FOR THE DISTRICT OF WYOMING

---

JIMMIE G. BILES, JR., MD, a resident
of Wyoming,

    Plaintiff/Counter Defendant,

        vs.

JOHN HENRY SCHNEIDER, JR., MD,
MICHELLE RENE SCHNEIDER,
husband and wife, both residents of
Montana; JOHN HENRY SCHNEIDER,
JR., MD, PC, a Montana corporation; and
JOHN DOES I-XXX,

    Defendants/ Counter Claimants.

Case No. 11-CV-366-F

---

## ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

---

This matter is before the Court on Plaintiff/ Counter Defendant Jimmie G. Biles, Jr.'s

(Plaintiff's) Motion to Dismiss Defendants John and Michelle Schneider's (Defendants)

counterclaim.  On February 21, 2012, Defendants filed a counterclaim against Plaintiff

asserting claims for (1) Defamation; (2) Intentional Infliction of Emotional Distress; (3)

Intentional Interference with a Prospective Contractual Relation; and (4) Intentional

Interference with a Contract. Defendants' counterclaim alleges defamation based on Plaintiff's allegations in the Complaint filed in this case. Essentially, Defendants filed a counterclaim because Mr. Biles alleged Defendants conspired to defame Mr. Biles. However, a party to private litigation is privileged to publish alleged defamatory matter concerning another individual in the institution of or during the course of judicial proceedings. Restatement (Second) of Torts § 587 (1977); *see* Wyo. Stat. Ann. § 1-29-105 (2012). Accordingly, Defendants' claims for defamation and intentional infliction of emotional distress fail as a matter of law. Defendants' remaining claims fail to provide any factual support to survive a motion to dismiss under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## BACKGROUND

The Court is intimately familiar with the facts of this case. On December 7, 2011, Plaintiff filed a complaint against Defendants asserting claims for (1) Defamation; (2) Joint Enterprise; (3) Intentional Infliction of Emotional Distress; (4) Intentional Interference with Economic Relations; (5) and Conspiracy in violation of the civil Racketeering Influence and Corrupt Organizations (RICO) claim under 18 U.S.C. § 1962(c) and (d). All of Plaintiff's claims arise from a common set of facts. Plaintiff alleges Defendants conspired with their friend, Lisa Fallon, to publish a defamatory flyer about the Plaintiff. (Compl. ¶ 21). The

Complaint alleges Defendants purchased a spreadsheet with over 14,000 Wyoming addresses and gave the spreadsheet to Ms. Fallon so she could publish the defamatory flyer. *Id.* at ¶¶ 35-38. The Complaint further alleges that as part of the conspiracy, Defendants intend to have Ms. Fallon accept full and sole responsibility for this lawsuit. *Id.* at ¶¶ 25-26. Additionally, Plaintiff alleges Defendants offered Ms. Fallon payment for her involvement in this matter and Defendants agreed to indemnify Ms. Fallon for any liability she may suffer for participating in the conspiracy against Dr. Biles. *Id.* at ¶¶ 56-58.

On February 21, 2012, Defendants filed a counterclaim with their Answer. In the counterclaim, Defendants assert Dr. Biles is angry with Defendants and defamed Defendants with the allegations contained in Plaintiff's Complaint. (Countercl. ¶¶ 15, 20, 31). Defendants allege that Ms. Fallon admitted creating the flyer and denied any involvement with the Schneiders. Defendants allege Plaintiff knew the Schneiders were not involved in disseminating the flyers, yet still filed this lawsuit against the Schneiders for defamation and other claims related to the flier. The filing of the complaint in this lawsuit forms the basis of Defendants' counterclaim.

To support the counterclaim for defamation, Defendants allege:

> 53. Biles' complaint accuses Schneider of, among other things, conspiring to create and/or publish the flier.

54. Biles knew that his complaint was false and, despite such knowledge, recklessly published the complaint by filing the same in a public docket.

55. Biles knew the complaint would be obtained by the local newspapers.

56. Biles knew allegations in the complaint would be recited or recast in the local papers.

*Id.* at ¶¶ 14-15). Defendants' claim for intentional infliction of emotional distress is also based on Plaintiff's statements made in the complaint. Additionally, Defendants asserted claims for intentional interference with a prospective contractual relation, and intentional interference with a contract. Defendants do not present any additional facts to support these other claims.

## STANDARD OF REVIEW

A court may grant a motion to dismiss under Rule 12(b)(6) if there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "In reviewing a Fed. R. Civ. P. 12(b)(6) dismissal, a court must accept as true all well-pleaded facts, as distinguished from conclusory allegations, and those facts must be viewed in a light most favorable to the non-moving party." *Moss v. Kopp*, 559 F.3d 1155, 1159 (10th Cir. 2010). To avoid dismissal, a "[counterclaim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Leverington v. City of Colo. Springs*,

643 F.3d 719, 723 (10th Cir. 2011); *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the [pleaded] factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1940.

## DISCUSSION

Defendants' counterclaims are based on the allegations made by Dr. Biles in his complaint. Plaintiff argues that the allegations in the complaint are absolutely privileged and therefore, Defendants' counterclaims for defamation and intentional infliction of emotional distress fail as a matter of law. Additionally, Plaintiff claims that once the Court determines that the statements made in the complaint are privileged, Defendants' remaining claims for intentional interference with a prospective contractual relation and intentional interference with a contract also fail. The Court agrees.

### A. The allegations made in Plaintiff's complaint are privileged

The Wyoming Supreme Court has not addressed the specific issue of whether statements made in a complaint are privileged. Where a state's supreme court has not ruled on an issue of state law, a federal court sitting in diversity must predict what the state's supreme court would do if faced with the issue. *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1228 (10th Cir. 2009). "The Court should consider analogous decisions by the state supreme court . . . , decisions of federal and other state courts, and the general weight and trend of

5

authority." *First State Bank v. Daniel & Assocs., P.C.*, 519 F. Supp. 2d 1157, 1160-61 (D.

Kan. 2007) (citing *MidAmerica Constr. Mgmt., Inc. v. MasTec N. Am., Inc.*, 436 F.3d 1257,

1262 (10th Cir. 2006)).  After considering this evidence, the Wyoming Supreme Court would

likely conclude that the allegations in the complaint are absolutely privileged.  Thus,

Defendants claims for defamation and intentional infliction of emotional distress fail as a

matter of law.

First, while the Wyoming Supreme Court has not specifically addressed defamation

relating to statements made in a complaint, similar cases hold that statements made in judicial

proceedings are privileged.  For example, the Court has held that witnesses are absolutely

immune from liability for statements made in judicial proceedings.  In *Elmore v. Van Horn*,

844 P.2d 1078 (Wyo. 1992), the Wyoming Supreme Court stated:

> Since we have not considered the scope of common law witness immunity, we
> look to United States Supreme Court precedent.  Traditionally, witnesses and
> those who participate in judicial proceedings enjoy absolute immunity for civil
> claims which could result from their statements made in open court.  *Briscoe
> v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108 (1983).  **"The immunity of parties
> and witnesses from subsequent damages liability for their testimony in
> judicial proceedings was well established in English common law."**
> *Briscoe*, 460 U.S. at 330-31, 103 S.Ct. at 1113 (citations omitted).

*Elmore*, 844 P.2d at 1079 (emphasis added).  The Court subsequently held that the witness

was entitled to "absolute immunity for her testimony in court."  *Id.* at 1084.

Additionally, in *Abromats v. Wood*, 213 P.3d 966 (Wyo. 2009), the Court addressed the issue of whether statements made by a witness are absolutely privileged.  In that case, the Court stated "[a] witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding." *Id.* (quoting Restatement (Second) of Torts § 588 (1977)).  These cases illustrate that the Wyoming Supreme Court tends to treat statements made during judicial proceedings as privileged.

Moreover, republishing a complaint or any of the contents of the complaint are privileged under Wyoming law.

> The publication of a fair and impartial report of any indictment, the issuing of any warrant, the arrest of any person accused of a crime, **or the filing of any pleading or other document in any criminal or civil cause in any court, or of the contents thereof, is privileged unless it is proved that the same was published maliciously** or that the defendant has refused or neglected to publish in the same manner in which the publication complained of appeared a reasonable explanation or contradiction thereof by the plaintiff, or that the publisher has refused upon plaintiff's request to publish the subsequent determination of the suit or action.

Wyo. Stat. Ann. § 1-29-105 (Lexis 2012).  Defendants' counterclaim does not allege Plaintiff filed the Complaint with malice.  Thus, to the extent Plaintiff alleges defamation

because others published the Complaint in local newspapers, this claim is barred by Wyo.

Stat. Ann. § 1-29-105.

Furthermore, in addressing similar issues, the Wyoming Supreme Court frequently

turns to the Restatements for privileges. *See e.g. Abromats*, 213 P.3d at 969 (quoting

Restatement (Second) of Torts § 588 for absolute witness privileges).   The Restatements

directly address the relevant issue before the Court:

> A party to a private litigation . . . is absolutely privileged to publish defamatory
> matter concerning another in communications preliminary to a proposed
> judicial proceeding, or in the institution of or during the course and as part of,
> a judicial proceeding in which he participates, if the matter has some relation
> to the proceeding.

Restatement (Second) of Torts § 587.  The comments further explain:

> a) The privilege stated in this Section is based upon the public interest in
> according to all men the utmost freedom of access to the courts of justice for
> the settlement of their private disputes.  Like the privilege of an attorney, it is
> absolute.  It protects a party to a private litigation . . . from liability for
> defamation irrespective of his purpose in publishing the defamatory matter, or
> his belief in its truth or even his knowledge of its falsity.
>
> . . .
>
> d)The rule stated in this Section affords to a party to litigation the same
> protection from liability for defamatory statements made in his pleadings as
> that accorded to an attorney under the rule stated in § 586. . . .

*Id.* (Comments a and d). Defendants' claims against Plaintiff fall squarely within this privilege. The alleged defamatory statements were made in the institution of or during the course of a judicial proceeding. Any alleged defamation in this case was in a public court document and not made to any news reporter. Defendants' allegations are essentially that Dr. Biles defamed them by alleging that Defendants conspired to defame Dr. Biles. These statements are directly related to the judicial proceeding.

Finally, the overwhelming weight of authority holds that statements made in complaints are absolutely privileged. *See Primas v. Oklahoma,* 958 F.2d 1506, 1510 (10th Cir. 1992) ("Even if [defendant] helped to create a defamatory impression . . . the criminal complaint was an absolutely privileged document); *SCO Group, Inc. v. Novell, Inc.*, 2010 U.S. Dist. LEXIS 15414, at *4 (D. Utah 2010) ("The general rule is that judges, jurors, witnesses, litigants, and counsel involved in a judicial proceeding have an absolute privilege against suits alleging defamation."); *Shade v. Farmers State bank*, 1990 U.S. Dist. LEXIS 1025, at *3 (Dist. Kan. 1990) ("an absolute privilege attaches to statements by any participant in a judicial proceeding . . ."); *Hollander v. Nichols*, 19 So. 3d 184, 195 (Ala. 2009) ("a party that has published allegedly defamatory matter in the course of a judicial proceeding may claim, as a defense to a defamation action based on that publication, the absolute privilege described in the *Restatement (Second) of Torts § 587 (1977)*") *White v. Basnett*, 700 P.2d

666, 667-68 (Okla. Ct. App. 1985) (civil complaint is privileged). As one Court explained, "This privilege exists for the purpose of preserving both the integrity of the judicial proceeding and the associated quest for the ascertainment of truth that lies at its heart." *SCO Group, Inc.*, 2010 U.S. Dist. LEXIS 15414, at *5.

Defendants have not cited, and the Court has not found any cases holding that allegations made in a civil complaint are not privileged. The only case cited by Defendants is *Asay v. Hallmark Cards, Inc*, 594 F.2d 682 (Iowa 1979). In that case, the Plaintiff sent copies of this complaint to various news services with the malicious intent to defame the defendant. However, even that court recognized that statements made in pleadings are typically privileged. The Court stated that the pivotal factor is to whom the matter is published. "Publication to the news media is not ordinarily sufficiently related to a judicial proceeding to constitute a privileged occasion." *Id.*

The facts of that case are distinguishable from the facts of this case. Defendants do not allege Plaintiff distributed copies of the complaint to the media or that Plaintiff maliciously distributed copies of the Complaint. Accordingly, the Court finds this case easily distinguishable from *Asay*.

Defendants' counterclaims for intentional infliction of emotional distress and defamation are based on the allegations made by Dr. Biles in his complaint. After reviewing

10

relevant sources from Wyoming and other jurisdictions, the Court finds that the allegations

in the complaint are absolutely privileged.   Therefore, Defendants' counterclaims for

defamation and intentional infliction of emotional distress fail as a matter of law.[1]

**B. Defendants' remaining claims also fail**

Plaintiff claims that once the Court determines that the statements made in the

complaint are privileged, Defendants' remaining claims for intentional interference with a

prospective contractual relation and intentional interference with a contract also fail as a

matter of law.  The Court agrees.

The Wyoming Supreme Court "has adopted the Restatement (Second) of Torts §§ 766

and 766B, intentional interferences with a contract and intentional interference with

prospective contractual relations, respectively." *Lever v. Community First Bancshares, Inc.*,

989 P.2d 634, 639 (Wyo. 1999).

> The elements of intentional interference with a contract are: (1) the existence
> of the contract; (2) the defendant's knowledge; (3) intentional and improper
> interference inducing or causing a breach; and (4) resulting damages. *Mudge*,

---

[1] Defendants also have two allegations in the counterclaim that may not be based on the
allegations in Plaintiff's Complaint.  The counterclaim alleges "Biles has made statements
regarding the surgical skill of John Schneider that are defamatory.  Plaintiff has stated that he
would not take a dying dog to Plaintiff" (sic) and "Plaintiff caused to be created and then mailed
a letter to surgeons in the Billings, Montana area criticizing John Schneider." (Countercl. ¶¶ 65-
66).  There are no facts to support these claims besides these three sentences.  This is insufficient
to meet the pleading requirements under the Federal Rules of Civil Procedure.

748 P.2d at 715.  The elements for intentional interference with prospective contractual relations provide:

> "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether interference consists of
>
>> (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or
>> (b) preventing the other from acquiring or continuing the prospective relation."

*Martin*, 667 P.2d at 1162.

*Lever*, 989 P.2d at 639-40.

To support their claims, Defendants allege:

73. Biles has purposefully and with malicious intent referred potential patients away from Schneider.

74. Biles has referred clients from Schneider to other neurosurgeons.

75. Biles has encouraged patients to sue Schneider.

(Countercl. at ¶¶ 73-75).  To support the claim for intentional interference with a contract, Defendants allege "Biles has intentionally and improperly interfered with the doctor-patient relationship, resulting in a breach of the doctor-patient contract." *Id.* at 80.  The allegations in the counterclaim are simply recitals of the elements with no factual support.  The Court has reviewed Defendants' counterclaim numerous times searching for facts to support these

12

claims.  After reviewing the counterclaim numerous times, the Court finds that Defendants'

counterclaims are insufficient to survive a motion to dismiss under *Iqbal* and *Twombly*.

A "complaint must contain sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Leverington*, 643 F.3d at 723; *Twombly*, 550 U.S. 570.

"A claim has facial plausibility when the [pleaded] factual content . . . allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

129 S.Ct. 1940.  Here, Defendants' counterclaims are mere conclusory statements of the

elements.  Even if the Court accepts all of Defendants facts as true, there are not enough facts

to state a claim that is plausible on its face.

## CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff's motion to dismiss

Defendants' counterclaims is GRANTED.  IT IS ORDERED Defendants' claims for

defamation and intentional infliction of emotional distress based on the allegations in

Plaintiff's Complaint are dismissed with prejudice.  However, Defendants' claims for

defamation which are not based on the allegations in the Complaint are dismissed without

prejudice.  Finally, Defendants' claims for intentional interference with a prospective

contractual relation and intentional interference with a contract are dismissed without

prejudice.  IT IS FINALLY ORDERED that if Defendants have claims unrelated to

Plaintiff's pleadings, they shall file an amended counterclaim no later than fourteen days

after entry of this order.

Dated this 11th day of April, 2012.

_____
NANCY D. FREUDENTHAL
CHIEF UNITED STATES DISTRICT JUDGE