1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    FOR THE DISTRICT OF WYOMING

 3   ------------------------------------------------------------

 4   JIMMIE G. BILES, JR., M.D.,
     a resident of Wyoming,
 5
              Plaintiff,                 Case No. 11-CV-366-F
 6
              vs.                        Cheyenne, Wyoming
 7                                       April 26, 2012
     JOHN HENRY SCHNEIDER, JR., M.D.,    7:42 a.m.
 8   MICHELLE RENE SCHNEIDER, husband
     and wife, both residents of Montana;
 9   JOHN HENRY SCHNEIDER, JR., M.D.,
     P.C., a Montana corporation;
10   and JOHN DOES I-XXX,                CERTIFIED COPY

11            Defendants.
     ------------------------------------------------------------
12   JIMMIE G. BILES, JR., M.D.,

13            Plaintiff,                 Case No. 11-CV-294-F

14            vs.

15   LISA SHAURETTE FALLON,
     a resident of Indiana,
16
              Defendant.
17
     JOHN H. SCHNEIDER and
18   MICHELLE SCHNEIDER,
              Non-Party Movants.
19   ------------------------------------------------------------

20           TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS

21           BEFORE THE HONORABLE NANCY D. FREUDENTHAL
                 CHIEF UNITED STATES DISTRICT JUDGE
22
     Court Reporter:          LISA D. ANTHONY, RPR, CRR
23                            320 North Impala Drive
                              Fort Collins, CO  80521
24                            (970)224-9363
     Proceedings recorded by mechanical stenography,
25   transcript produced by computer.
```

```
 1   APPEARANCES:

 2   For the Plaintiff:      MR. R. DANIEL FLECK
                             MS. M. KRISTEEN HAND
 3                           Attorneys at Law
                             THE SPENCE LAW FIRM, LLC
 4                           15 South Jackson Street
                             P.O. Box 548
 5                           Jackson, Wyoming  83001

 6                           MR. WILLIAM L. SIMPSON
                             Attorney at Law
 7                           BURG SIMPSON ELDREDGE HERSH & JARDINE
                             P.O. Box 490
 8                           Cody, Wyoming  82414

 9                           MR. CHRISTOPHER C. VOIGT
                             Attorney at Law
10                           CROWLEY FLECK
                             490 North 31st Street, Suite 500
11                           P.O. Box 2529
                             Billings, Montana  59103
12
     For Defendants          MR. BRADLEY D. BONNER
13   Schneider:              MR. LAURENCE W. STINSON
                             Attorneys at Law
14                           BONNER STINSON, P.C.
                             1421 Rumsey Avenue
15                           Cody, Wyoming  82414

16   For Defendant           MR. P. CRAIG SILVA
     Fallon:                 Attorney at Law
17                           WILLIAMS PORTER DAY & NEVILLE
                             159 North Wolcott, Suite 400
18                           P.O. Box 10700
                             Casper, Wyoming  82602
19
               (All counsel appeared by telephone)
20
                             INDEX
21   STATEMENTS                                          PAGE

22   By Mr. Bonner                                      3, 17

23   By Mr. Fleck                                           9

24   By Mr. Silva                                          15

25   Ruling by the Court                                  19
```

BILES V. SCHNEIDER    STATUS CONFERENCE    11-CV-366/294-F    3

1          (Proceedings commenced at 7:42 a.m.,

2     April 26, 2012.)

3          THE COURT:  Good morning.  This is Nancy

4     Freudenthal.  Could I get a roll call from the phone?

5          MR. BONNER:  In Cody, this is Brad Bonner and

6     Laurence Stinson for the Schneiders.

7          MR. SILVA:  In Casper, this is Craig Silva on

8     behalf of Lisa Fallon.

9          MR. VOIGT:  Chris Voigt in Billings on behalf of

10    Dr. Biles.

11         MR. SIMPSON:  Bill Simpson here in Cody on behalf

12    of Biles.

13         MR. FLECK:  Dan Fleck in Jackson for Biles.

14    Kristeen Hand is also on the phone.  She's out in Berkeley,

15    California.

16         THE COURT:  All right.  Who would like to proceed?

17         MR. BONNER:  I will, Judge.  This is Brad Bonner.

18         THE COURT:  Let me just say just for the record,

19    we're here discussing -- the case is Biles versus Fallon and

20    Biles versus Schneider, Docket 11-CV-294 and 366.

21         Go ahead, Mr. Bonner.

22         MR. BONNER:  Thank you, Your Honor.

23         You know, from the letter which we sent to you

24    yesterday, the purpose of our call today is for us to make a

25    disclosure to this tribunal.  We have determined this

1   disclosure is necessary pursuant to Rule 3.3(b), Rule

2   3.3(c), and the corresponding Comment 12 of the Wyoming

3   Rules of Professional Conduct for attorneys of law.  I will

4   talk about the specifics of those rules in a moment.

5           The disclosure today, Your Honor, concerns conduct

6   of our client, defendant John Schneider, which we learned of

7   for the first time on Monday of this week.  That was April

8   23.  This is an extraordinary and difficult circumstance.

9   In my 20 years of practicing law, this is not only the first

10  time I've ever had to make such a disclosure, but it's the

11  first time I've ever witnessed a disclosure to a tribunal

12  under rules such as these.

13          I never liked tattletaling, and that's sort of what

14  this feels like.  Our reading of the rules tells us that it

15  is our duty to do this.  We reached this conclusion of our

16  own accord after extensive consultation with bar counsel

17  Mark Gifford.

18          Let me first identify the pertinent provision of

19  the Rules of Professional Conduct at issue.  Rule 3.3,

20  Judge, is titled "Candor Toward the Tribunal."  The specific

21  provision we're focused on is Rule 3.3(b).  And the

22  pertinent provisions of that rule state:

23          "A lawyer who represents a client in an adjudicated

24  proceeding and who knows that a person has engaged in

25  criminal or fraudulent conduct related to the proceeding

1    shall take remedial measures, including, if necessary,

2    disclosure to a tribunal."

3         Rule 3.3(c) then provides the duties stated in

4    paragraph (b), the one I just read, apply even if compliance

5    requires disclosure of information protected by Rule 1.6.

6    And that rule is the duty of client confidentiality.

7         Comment 12 then provides further guidance about

8    these rules.  It is entitled "Preserving Integrity of the

9    Adjudicative Process."  The pertinent provisions of that

10   comment state as follows:  "Lawyers have a special

11   obligation to protect a tribunal against criminal or

12   fraudulent conduct that undermines the integrity of the

13   adjudicative process, such as bribing, intimidating or

14   otherwise unlawfully communicating with a witness."

15        The comment goes on to state, Judge, "Thus,

16   paragraph (b)," and it's referring to Rule 3.3(b), "requires

17   a lawyer to take reasonable remedial measures, including

18   disclosure, if necessary, whenever the lawyer knows that a

19   person, including the lawyer's client, has engaged in

20   criminal or fraudulent conduct related to the proceeding."

21        It is the comment's description of criminal or

22   fraudulent conduct to include bribing, intimidating, or

23   otherwise unlawfully communicating with a witness which

24   persuaded us that this disclosure is necessary.  Against

25   that backdrop, Judge, I will relate pertinent facts.

1            On Monday of this week, April 23, plaintiff's

2      counsel sent us an email, and the email included a number of

3      attachments that included both emails and documents which we

4      were previously unaware of.  The documents were obtained by

5      plaintiff's counsel as a result of their service of a

6      subpoena upon the Indiana hospital where Ms. Fallon works.

7      The emails contain communication between Mr. Schneider and

8      Ms. Fallon during the period October and November 2011.

9      During that time Ms. Fallon was a defendant in Biles v.

10     Fallon, but Biles v. Schneider had not yet been filed and

11     served.

12            In general, the emails concern Ms. Fallon's answers

13     to interrogatories and the testimony that she would be

14     giving in an upcoming scheduled deposition.  There is

15     considerable communication from Dr. Schneider where -- and

16     it's to Ms. Fallon -- where Dr. Schneider quite apparently

17     is instructing Ms. Fallon on what to say, what not to say,

18     and how to say it, both in her deposition and in her

19     interrogatories.  There is also a document that quite

20     apparently appears to be -- and it's provided from him to

21     her -- that appears to be his proposed text of her

22     interrogatory answers.

23            While all of that is a really, really, really bad

24     idea, I don't know if that conduct in and of itself would

25     necessarily motivate this disclosure.  However, the emails

1    also contain communication in which Dr. Schneider provides

2    Ms. Fallon with a doctor's note for signature by her

3    personal physician.  And the purpose of the note, it is

4    stated in their communication, is to prevent Ms. Fallon from

5    having to give her deposition in the litigation.

6         Then, Your Honor, when Ms. Fallon relates in an

7    email to Dr. Schneider that she has secured her doctor's

8    commitment to sign the doctor's note, thus hopefully in

9    their mind precluding the deposition, Dr. Schneider writes

10   in a responding email, "That should be a 250K-plus payoff

11   for your future.  Thank you."

12        Your Honor, after careful consideration of all of

13   this information, in consideration of Rule 3.3(b) and the

14   comments, we determined it was our duty to bring these

15   matters to the attention of the Court.  The rules go no

16   further than dictating a duty of candor, in this case

17   disclosure.  The rules don't say what the tribunal should

18   do, if anything, with the information that is disclosed.

19   The plaintiff will have the ability to take whatever steps

20   they desire.

21        The rules and the comments do discuss the issue of

22   withdrawal of counsel following a lawyer's compliance with

23   the duty of candor.  I'm alerting the Court at this time

24   that we will be filing a motion to withdraw as counsel for

25   Mr. and Mrs. Schneider, accordingly, and we will do so

1    promptly.

2            For now, Judge, that's the disclosure that we make.

3    If the Court has questions, I'll do my best to answer them.

4    Thank you.

5            THE COURT:  What discussions have occurred to

6    protect the Schneiders until they can secure replacement

7    counsel in terms of a stay?  What have the discussions, if

8    any, been?

9            MR. BONNER:  We have not had that discussion

10   specifically with plaintiff's counsel.  I can tell you that

11   due to some ongoing settlement negotiations, there has not

12   been a filing with respect to any of the information that we

13   have been talking about today.  There is no agreement in

14   place that that information will not be filed, but it has

15   not been filed as of this time.

16           I can tell the Court that it would be our hope that

17   there be a period of time permitted for the Schneiders to be

18   able to obtain separate counsel when we withdraw.

19           THE COURT:  Do you know -- well, without seeking

20   improper disclosures, I'd like to gain a better sense about

21   when the Fallons (sic) were advised of your withdrawal.

22   Have they signed documents acknowledging that?  Do you know

23   what efforts, if any, they've taken to secure replacement

24   counsel?

25           MR. BONNER:  Judge, the first time that we provided

1    information to plaintiff's counsel of our intent to withdraw

2    was at the same time we provided them with a copy of the

3    letter that we sent to you yesterday morning.  So they've

4    known that for less than 24 hours.

5            THE COURT:  Yeah, I -- go ahead.

6            MR. BONNER:  I can tell you that the Schneiders are

7    actively seeking other counsel.  There is some consideration

8    that under one of his insurance entities, that one of his

9    insurers may come in to defend him and provide a duty of

10   defense under a reservation of rights.  That is something

11   that I think may be able to occur in the near term.

12           THE COURT:  All right.  On that point, not wanting

13   to catch you, Mr. Fleck, or Kristeen by flat foot, what sort

14   of stay would you be able to absorb or accept in terms of

15   the pursuit of this case?

16           MR. FLECK:  Your Honor, good morning.  It's Dan.

17   You know, I mean, we've been down the road with this case

18   quite a ways, Counsel, and of course the Court as well.  And

19   so I don't know that I can -- that I'm capable of being

20   caught flat-footed anymore or, in the alternative, that I'm

21   capable of being caught in any way other than flat-footed

22   with what we're finding out.

23           I want to avoid 100 percent any kind of thought of

24   throwing counsel under the bus here, be it Brad, be it

25   Laurence or be it Mr. Silva.  I don't want to do that.

1    We're Wyoming lawyers, and this is something that I don't

2    think that our bar imagines can happen.  But -- and there's

3    always a but when you say something like that -- but I need

4    to correct the record a little bit and fill the record a

5    little bit, Your Honor.

6          These emails also, also said that Ms. Fallon should

7    send Dr. Schneider her digital device, including her cell

8    phone and her hard drive, so that he could, quote/unquote,

9    give them the microwave treatment.  If you Google right now

10   microwaving a hard drive, you will discover this is the way

11   criminals destroy evidence on their computers.  We also have

12   a litany of innuendo about how he is going to make Dr. Biles

13   pay for this with what I believe is the very lawsuit that

14   you dismissed several weeks ago and flooding the record full

15   of meaningless witnesses so that we, the plaintiffs, go on a

16   wild goose chase, and by the time we figure out it's all a

17   bunch of bull, that we will be so far down the road that

18   nobody will know what happened.

19         So there is much, much more going on here than the

20   litany of things that Brad Bonner properly disclosed.  I

21   have real questions, and I believe the Court should have

22   real questions as well, as to what steps have been taken to

23   get to this day.

24         We have been dealing with these laundry documents.

25   And that's what this is, Your Honor, just so that you're not

1    in the dark.  We've given you the laundry documents.  These

2    are the eight pages of items which Dr. Schneider gave on to

3    Ms. Fallon where he says that if she cooperates, we will

4    turn her into, quote/unquote, a prison bitch, where he

5    intimidates her repeatedly, where he instructs her to have

6    Mr. Silva -- demands that Mr. Silva have her sign her

7    interrogatories under oath, which is, by definition,

8    subornation of perjury, where he threatens her that she will

9    be left with nothing and where, Your Honor, he absolutely,

10   positively bribes her.  He says that if you take the bullet,

11   you will be rewarded far in excess of any puny judgment that

12   Dr. Biles could ever get against you.

13          Now, those documents were received in December by

14   Bonner Stinson.  They were presented to the court, I

15   believe, through Judge Johnson.  They were presented to the

16   court through yourself, Judge Freudenthal, numerous times.

17   So to be sitting here on April the 26th or the 27th,

18   whatever -- the 26th and to be disclosing this is, to me, a

19   day late and a dollar short.

20          And I mean that in both ways in a literal fashion.

21   It's a day late because we, the plaintiffs, have wasted six

22   months on this case.  You, the Court, have wasted an

23   extraordinary amount of time on this case with

24   counterclaims, with counter-counterclaims, with discovery

25   disputes, with being told -- me being told on the record

1   that I somehow had fabricated and had made up this story

2   about Dr. Schneider conspiring with Ms. Fallon.  And people

3   were outraged that we would make these kind of comments,

4   when it was all right there in front of anybody who would

5   reasonably look.

6           So, Your Honor, I'm befuddled and I'm perplexed.  I

7   hear for the first time today now we have insurance at

8   issue.  So you asked me an honest question that you weren't

9   expecting this kind of a long answer about -- the question

10   is, do we need a stay?  The answer is, we're supposed to

11   designate experts next -- very next week in the Fallon case.

12   And so you think about what we've done here.  And right at

13   Thanksgiving in November of 2011, we send out a pretty

14   simple subpoena which the Court probably could recite by

15   heart.  And what that says is, listen, we think that you

16   folks conspired with this lady from Indiana, and what we'd

17   like is we'd like all your emails, we'd like all your phone

18   calls, we'd like all your text messages.  And you know what

19   else?  We believe that you not only paid for her lawyer, but

20   you bribed her.

21           Oh, Your Honor, I should mention as well that in

22   that last set of discovery that they've been trickling out

23   as a response to the subpoena we found two payments:  One

24   $5,000 payment, I believe it was, a couple days before her

25   deposition and a $10,000 payment immediately after her

1    deposition.  That is called a bribe.  And that is the

2    consummation of a bribe that was promised in the previous

3    laundry documents.

4             So we subpoenaed that, and all of a sudden we got

5    into this huge foot-dragging exercise.  We finally had to go

6    to Judge Johnson.  Judge Johnson heard it all, heard it all

7    repeatedly, and said, you know what, I think you're going to

8    get all of that stuff and I think you're going to produce

9    all of those computers.  So we went out and we spent about

10   $35,000 on computer experts.  I don't think we found one

11   single email, not one, but we did find that those computers

12   had been accessed numerous times with Passport devices,

13   which is the hard drive that was never produced to us.

14            And the two computers that we didn't get,

15   Ms. Fallon says to us that one of them had orange juice

16   spilled all over it.  Our computer forensic expert found no

17   evidence of any orange juice on it, but he also found no

18   evidence of communication, even though she told us that

19   there were over a hundred emails on that computer that dealt

20   with her and John Schneider.  John Schneider tells us, oh,

21   every single email that I did was on a computer that was

22   just miraculously stolen in Billings from a Hummer.

23            This case is utterly and completely built on lies

24   and deceit.  It has been deceitful from the minute it

25   started until the end.  What they did to Jimmie Biles was

1   atrocious and horrible.  They used and manipulated this very

2   court in what they decided to do and how they decided to

3   abuse the process here.

4          And so I have gotten myself all befuddled and

5   flustered here about this issue.  But the fact is I don't

6   know how long a stay we need because I've got a ball of

7   twine here that I don't think I can ever unravel.  I don't

8   know what's true and what's not true anymore.  And I think

9   that we've got two rule books sitting here in front of us,

10  Your Honor.  We've got the rule book that deals with how

11  Wyoming lawyers are supposed to act.  And that is why we're

12  here today.  And then we've got a whole other rule book on

13  the other side of the table, O'Connor's Federal Rules, and

14  that rule book deals with how we are supposed to punish the

15  litigants in this case for the way they've behaved.  And I

16  think that those are two distinctly different issues.

17          I think that after this ball of twine gets unwound

18  about what to do about Mr. Stinson and Mr. Bonner and,

19  eventually, Mr. Silva's predicament, I think we need to

20  spend a lot of time in that other rule book trying to figure

21  out how exactly to deal with this profound, profound act of

22  bribery, abuse of process, tampering with witnesses.  It

23  goes to the very, very heart and soul of everything we

24  believe in as lawyers and everything we believe in as the

25  justice system, and these people have proverbially given it

1    the middle finger.  And I am just astounded by the whole

2    thing.

3          So that is not an answer that helps in any way, but

4    it allows me, I guess, to get a few things off my chest this

5    morning, Your Honor.

6          THE COURT:  All right.  Craig, I'll turn to you

7    for --

8          MR. SILVA:  Thank you, Your Honor.

9          No doubt I join in the comments of Mr. Bonner.  I

10   believe that we're properly here before the Court under that

11   ethical rule.  And I would join in his sentiments and

12   comments that he's made in regard to that.  That timeline

13   basically applies in regard to my client as well.  Those

14   things that Mr. Bonner has suggested are troubling in regard

15   to the documentation that we have seen and reviewed.

16         And in regard to the withdrawal, at least at this

17   point, Your Honor -- and my client is concerned.  She

18   doesn't use the word "withdrawal," that's a lawyer's word,

19   but she's afraid I'm going to fire her.  And maybe I should

20   fire her.  And ultimately we might -- I might ultimately

21   have to move to withdraw.  But because of where we're at in

22   regard to a possible resolution in this case, at least at

23   this point it's not my position to do that, to move to

24   withdraw, although that might come.  And she knows that that

25   might be something that would come in the future.

 1          She has no money.  She's of limited means.  When

 2     Mr. Fleck indicates to the Court that her retainer is paid

 3     by Dr. Schneider, those documents have been provided in

 4     discovery, and that's the case.  She does not have the means

 5     to really retain any further counsel.

 6          My other concern for her is, as you look at these

 7     documents, I think both for Dr. Schneider and for my client,

 8     that there will be some indication on a go-forward discovery

 9     basis that my client would ultimately have to take the Fifth

10     Amendment on many of these issues because they have placed

11     themselves in a very difficult spot.

12          So that being the case, Your Honor, I think we're

13     in the right spot and doing the right thing in regard to

14     Rule 3.3.  And as to the remedy, at least from my position

15     at this point is we're not in a position of remedy yet.  I

16     agree with Dan that there is another rule book to be applied

17     here, but that rule book needs to be applied when people

18     file motions and go forward with some sort of law for

19     application of that second rule book.  Even if you look in

20     the comments of Rule 3.3, some of the remedies discussed

21     are, make the statement of the matter to the trier of fact,

22     ordering a mistrial, or perhaps nothing.

23          And at least at this point where the parties are

24     situated, I think that the right remedy is to do nothing,

25     allow the lawyers to work through this, so long as the

1  disclosures have been made to the court, allow the lawyers

2  to work through this at some attempted resolution.  Maybe

3  that leads ultimately to withdrawal.  It may ultimately lead

4  to withdrawal for myself.

5          But even if you look under Rule 3.3 and its Comment

6  16, it says, "Normally a lawyer's compliance with the duty

7  of candor imposed by this rule does not require that the

8  lawyer withdraw from the representation of a client whose

9  interests will be or have been adversely affected by the

10  lawyer's disclosure."

11          So until the relationship with me and my client

12  reaches the point of where we can't seem to work together to

13  try to find a way out of this, at least I'm not willing to

14  take those steps to withdraw at this point, mostly because I

15  think we're doing the right thing under the rule and the

16  parties, I think, are moving toward some sort of resolution.

17          But in compliance with Rule 3.3, I think we're in

18  the right place at the right time and disclosing the right

19  thing to the Court, Your Honor.

20          THE COURT:  All right.  Thank you.  Anything more?

21          MR. BONNER:  Judge, this is Brad Bonner.  May I,

22  just for a moment?

23          THE COURT:  Yes.

24          MR. BONNER:  It's really important that I make a

25  couple of comments in response to what Mr. Fleck said.  He

1    refers to them as the laundry documents that have been sort

2    of known in the case and identified in the case for a period

3    of months.  What he did not tell you was that when those

4    laundry documents were identified and as long as they've

5    been in the case, there was nothing associated with them

6    that said who authored them.  And in fact, within the

7    context -- or within the text of those documents

8    Dr. Schneider is referred to in the third person.

9         What came this week was the email that they

10   produced to us, which was an email from Dr. Schneider and

11   Ms. Fallon whereby the laundry document, if you will, was an

12   attachment.  That was the first time that there was a direct

13   link between Dr. Schneider and the document itself.  We can

14   all -- we could all surmise.  But until then, we didn't have

15   the proof that we have now.

16        The other element that I wanted to make mention to

17   the Court, just so that everyone is on the same page, is

18   that we learned two days ago, Tuesday, of the potential that

19   one of Dr. Schneider's insurers may be willing to provide a

20   defense.  That is not something that has been known before

21   now.

22        Thank you, Your Honor.

23        THE COURT:  All right.  Thank you.  I appreciate

24   counsel's bringing these matters to the Court's attention.

25   Thank you, Mr. Bonner, for taking the initiative to write to

1  the Court, schedule this call.  Thank you to everybody for

2  being available at a very early time to confer about this.

3        At this time my decision will be to stay the case

4  until August 1st.

5        MR. BONNER:  Judge, we didn't hear that.

6        THE COURT:  I will stay the case until August 1st.

7  There will be an order associated with that stay which

8  identifies a date for providing a status report to the Court

9  if we don't by then know the status of the case in terms of

10  whether the case is ready to go forward and, if so, on what

11  schedule.

12        I would, Mr. Silva, include in that order that any

13  motion by you, your firm, to withdraw from your

14  representation must be filed on or before June 15th.  I

15  don't want to get through a significant window of time when

16  plaintiff sees nothing moving forward on this case, only to

17  then face another withdrawal and further delay.  So you'll

18  need to make that decision on or before that date.

19        MR. SILVA:  Thank you, Your Honor.

20        THE COURT:  Certainly that doesn't preclude other

21  issues that may arise for which withdrawal would either be

22  permitted or granted, such as securing, you know, outside --

23  this is one of those where I would consider a motion to

24  withdraw without replacement counsel, under the same

25  circumstances that we've been discussing today.  So please

1    don't understand that you're then stuck, no matter what,

2    after that date.  But after that date there will need to

3    be -- we'll need to be proceeding under a different rule and

4    there will need to be an explanation for why you're

5    withdrawing later.

6              MR. SILVA:  Yes, Your Honor.

7              THE COURT:  And I will give notice to everyone at

8    this point in time of my intent to release this transcript

9    to the U.S. Attorney's Office for the District of Wyoming.

10   You may file your thoughts or comments or responses or

11   objections or -- this isn't exactly an order to show cause,

12   but I feel like the matters just simply can't be shifted off

13   of counsel's shoulders -- legitimately shifted off of

14   counsel's shoulders under the rules that we've been

15   discussing, only to land in the Court's lap with the

16   corresponding obligations that I feel I have as an officer

17   of the court.

18             So I -- that is not a threat, but I do believe we

19   should set this on some timeline to allow counsel to

20   consider that and advise the Court, if you so wish, as to

21   why there is no obligation on the judiciary or,

22   alternatively, why some other action should be taken.

23             MR. BONNER:  Judge, this is Brad.  Do I understand

24   that you will provide us notice of a time frame when you

25   intend to do that?

1          THE COURT:  Well, my notice is that -- well, at

2     this time my -- May 7th is a Monday.  It's the Monday after

3     I return.  I've got some judicial training back East.  And

4     so you should expect that my intent to act would be to

5     deliver a transcript of this to the U.S. Attorney by Friday

6     of that same week.

7          And again, I'm leaving this window of time open for

8     you to provide advice or assistance to the Court on some

9     other approach, a different time frame, or reasons why such

10    action is either not required or would be improper or

11    inappropriate.

12         I'm sorry.  I guess the 7th -- would that be the

13    12th, then?  The 11th.  May 11th.

14         Is there anything else that we should address while

15    we're on the phone?

16         MR. FLECK:  Your Honor, I have -- this is Dan, I'm

17    sorry -- I have a litany of refill counts that I need to add

18    to that complaint.  And I would like permission of the Court

19    to continue filing matters in this case while it's under

20    stay, both on the motion to amend and also on the sanctions,

21    not necessarily against the lawyers, but against the

22    litigants for their conduct here.

23         I don't want to wait until August to do that,

24    simply because these issues are fresh right now and they're

25    ongoing.  And also, as I alluded to, those exact acts by

 1   these parties have had a tremendous economic impact on the

 2   case that, quite frankly, I believe the Court should remedy,

 3   and I will ask the Court to remedy with proper briefing, and

 4   that sort of thing.  And I don't mean to catch anybody else

 5   flat-footed here, but I'm certain that everybody understands

 6   that that is the next step.

 7        And to wait until August on those issues I don't

 8   believe is necessarily fair to the plaintiff.  But I realize

 9   what the Court's ruling is.  I guess I want to clarify about

10   the filings.

11        And Your Honor, that doesn't necessarily mean that

12   there has to be a response.  I would just like to be able to

13   get our filings in.

14        THE COURT:  Yes.  I appreciate that.  I just didn't

15   know if Mr. Bonner or anyone else had any thoughts about

16   that.

17        MR. FLECK:  And by response, Your Honor, I meant

18   from the defendants.  It doesn't concern me that they would

19   be allowed to have until August to respond to either our

20   amended complaint or our motion.  So I'm sorry, Your Honor,

21   for interrupting.

22        THE COURT:  All right.

23        MR. BONNER:  Judge, this is Brad.  It seems

24   appropriate to me that if there is going to be new counsel

25   in the case, new counsel ought to be able to be in the case

1    to deal with these matters from the beginning when they

2    occur.  For that reason, it would seem appropriate that any

3    filings occur after your stay is completed.  It just seems

4    that would keep the playing field level and fair for all

5    parties.

6         MR. FLECK:  Your Honor, in response to that -- this

7    is Dan -- that is a wonderful argument that mediates

8    actually allowing us to file our briefs.  No lawyer who gets

9    into this case is going to want to be faced with a bait and

10   switch and to be hit the minute they get involved in the

11   case with two significant motions that will likely change

12   the complexity of the case and change the tone of the case

13   from stem to stern.

14        So those motions should be allowed to be filed now

15   so that when they are searching for replacement counsel,

16   that counsel knows exactly and explicitly what he or she is

17   getting themselves into.

18        THE COURT:  Well, I'll permit plaintiff to proceed

19   with plaintiff's filings.  However, the time frame under the

20   local rules for responses to those filings won't commence

21   until August 1st or as otherwise ordered by the Court.

22        Any other matters?

23        MR. BONNER:  No, Judge.

24        MR. SILVA:  No, Judge.

25        THE COURT:  All right.  Thank you very much for

BILES V. SCHNEIDER     STATUS CONFERENCE     11-CV-366/294-F     24

1    bringing this to the Court's attention.  Obviously, the stay

2    won't affect the Court's expectation that a motion for

3    withdrawal from one or more counsel may occur during the

4    stay interim.  And the Court will act on those motions

5    consistent with the discussions we've had here.

6          MR. FLECK:  Your Honor -- this is Dan -- I assume

7    that our responses to those motions to withdraw should be

8    filed --

9          THE COURT:  Yes, they would be filed under the

10   local rules.  Those deadlines would remain in effect for

11   you.

12         MR. FLECK:  Thank you.

13         THE COURT:  And if there are other matters that are

14   confusing about whether it should trigger a response before

15   August 1st, please call chambers and we'll set up another

16   call.

17         MR. FLECK:  Thank you, Your Honor.

18         MR. BONNER:  Thank you, Judge.

19         THE COURT:  All right.  Thank you, gentlemen.

20   Thank you, Kristeen.

21         MS. HAND:  Thank you.  Bye.

22     (Proceedings concluded at 8:18 a.m.,

23     April 26, 2012.)

24

25

C E R T I F I C A T E

I, LISA D. ANTHONY, Deputy Official Court Reporter for the United States District Court for the District of Wyoming, a Registered Professional Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein on the aforementioned subject on the date herein set forth, and that the foregoing pages constitute a full, true and correct transcript.

Dated this 7th day of May, 2012.


/s/ Lisa D. Anthony
_____
LISA D. ANTHONY
Registered Professional Reporter
Certified Realtime Reporter